# EXHIBIT A

Westlaw.

Not Reported in F.Supp.2d
2003 WL 23095590 (E.D.La.)
**(Cite as: 2003 WL 23095590 (E.D.La.))**

Page 1

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Louisiana.
Kelly GUIDRY
v.
JEN MARINE, LLC, et al
**No. Civ.A. 03-0018, Civ.A. 03-1127.**

Dec. 24, 2003.

Lester J. Waldmann, Lester J. Waldmann, APLC, Les Anthony Martin, Law Office of Les A. Martin, Gretna, LA, for plaintiff.

Rufus C. Harris, III, Alfred Jackson Rufty, III, Cindy Galpin Martin, Harris & Rufty, LLC, New Orleans, LA, for defendants/third-party plaintiff.

Overton Thomas Harrington, Jr., Les Anthony Martin, Law Office of Les A. Martin, Gretna, LA, for third-party defendant.

*ORDER AND REASONS*

ROBY, Magistrate J.

*1 Before the Court was the plaintiffs', Larry Kerner and Kelly Guidry, Motion to Compel Response to Subpoena and to Compel Responses to Questions Presented to Jack Hoyle and Neil Wiseman at their Depositions, and for Attorney's Fees, Costs and Discovery Sanctions (doc. # 15). A hearing on the motion was held on July 23, 2003. The Court granted the motion to the extent that the plaintiffs sought to re-depose Neil Wiseman, and continued the motion to the extent the plaintiffs sought the file of Jack Hoyle and to re-depose Hoyle. Further, the Court continued the motion to the extent the plaintiffs sought sanctions

and to recover fees and costs incurred in filing the motion. [FN1]

FN1. Rec. Doc. No. 27.

On August 22, 2003, the Court granted the motion in part, denied the motion in part and continued the motion in part. [FN2] The Court found that attorney's fees are warranted in this matter and ordered the plaintiffs to submit the documentation required by Local Rule 54 .2 no later than August 29, 2003. The plaintiffs complied. [FN3] Upon review of the information submitted, the Court found that the plaintiffs submitted insufficient information for the Court to make a determination of the "reasonable hourly rate."

FN2. Rec. Doc. No. 31.

FN3. Rec. Doc. No. 41.

Thereafter, the Court ordered the plaintiffs to submit sufficient evidence of the rates charged in similar cases by other local attorneys with similar experience, skill and reputation no later than October 27, 2003. [FN4] The plaintiffs again complied, and the Court is now ready to rule on the amount of attorney's fees that should be awarded.

FN4. Rec. Doc. No. 58.

*I. Background*

The plaintiffs filed the instant Jones Act suit claiming that Larry Kerner was injured when the M/V ERIN ELIZABETH flipped in Lake Ponchartrain. The plaintiffs claim that the accident caused Kerner to injure his neck, back, and head, causing him to suffer with post traumatic stress disorder. They also allege that Kerner's injuries were caused by the negligence of the defendant, Jen Marine, L.L.C. ("Jen Marine").

On June 10, 2003, during the course of discovery in this matter, the plaintiff issued a subpoena to the insurer

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 2
2003 WL 23095590 (E.D.La.)
**(Cite as: 2003 WL 23095590 (E.D.La.))**

of Jen Marine, Jack Hoyle ("Hoyle") of Jack Hoyle and Associates, requesting that Hoyle produce his entire file in this matter. The plaintiffs claimed that the defendant responded to the subpoena by producing partial responses, as well as a privilege log. Hoyle objected to several of the requests claiming that the information sought was protected from disclosure by the work product doctrine and the attorney-client privilege.

The plaintiffs subsequently filed a motion to compel, seeking to obtain the file of Hoyle. The plaintiffs claimed that documents in the possession of a third party insurance adjuster are subject to discovery. They contended that because these documents were prepared in the ordinary course of business, they are not subject to the work product privilege. The plaintiffs also requested that Hoyle and Neil Wisemann, the vessel owner, be required to respond to inquiries made during their depositions.

*2 Jen Marine opposed the motion contending that the information compiled by Hoyle was protected from disclosure by the attorney-client and work product privileges. It contended that several of the documents requested contained communications between Hoyle and counsel for Jen Marine. It also submitted that several of the communications contained Hoyle's opinion about litigation. Jen Marine also asserted that it will provide the documents to the Court for *in camera* review upon request. Finally, Jen Marine argued that the inquiries made during the depositions of Hoyle and Wisemann are also protected from disclosure by the attorney client and work product privileges.

II. *Analysis*

A. *Rule 37*

Motions to compel discovery responses are governed by Rule 37 of the Federal Rules of Civil Procedure. That rule provides that "[i]f a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions." Fed. R. Civ. P. 37(a)(2). Rule 37(a)(4)(A), which governs sanctions under the rule, requires the award of reasonable expenses, including attorney's fees, unless the motion to compel discovery was unjustified

or other circumstances make the award unjust. *Lischka v. Tidewater Services, Inc.*, 1997 WL 27066, at *4 (E.D.La. Jan.22, 1997). The rule provides:

> If the motion is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.
> Fed. R. Civ. P. 37(a)(4)(A).

The plaintiffs seek to recover $11,403.78 in fees and costs. The plaintiffs are represented by Les A. Martin. Mr. Martin contends that he expended 55.8 hours at an hourly rate of $200.00 in bringing the Motion to Compel. Martin also seeks to recover $243.78 in costs such as photocopying, travel, parking and transcript costs.

Further, in plaintiffs' Motion for Leave to Supplement Record to Provide Court with Sufficient Evidence of Rates Charged in Similar Cases by other Local Attorneys with Similar Experience, Skill, and Reputation, the plaintiffs informed the Court that they also are seeking additional costs for deposition transcripts, aside from the $243.78 previously requested. [FN5]

FN5. Rec. Doc. No. 62.

Since the initial application for fees and costs, invoices for the depositions of Mr. Weismann and Mr. Hoyle were obtained, totaling $310.50 and $435.40, respectively. Therefore, the plaintiffs are seeking costs in the amount of $989.68. [FN6] The fees and costs requested total $12,149.68.

FN6. This amount includes the original

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 23095590 (E.D.La.)
(Cite as: 2003 WL 23095590 (E.D.La.))

Page 3

$243.78 added to the amount of $745.90 submitted in the supplemental memorandum.

*3 Plaintiffs' counsel claims that these hours were incurred in filing the Motion to Compel and opposing Jen Marine's Motion to Review and Set Aside Magistrate Judge's Order. [FN7]

FN7. Rec. Doc. No. 35.

Jen Marine opposes the itemization of costs submitted by the plaintiffs contending that the number of hours detailed are excessive, many tasks listed were not in conjunction with the preparation of the motion to compel, the attorney's hourly rate is excessive, and some of the costs listed are excessive. [FN8] Jen Marine contends that the number of hours should be reduced by 37 hours, and an hourly rate of $150-165 is more in line with prevailing community rates. Finally, Jen Marine asserts that the $989.68 amount the plaintiffs seek in costs are not recoverable.

FN8. See Rec. Doc. No.45, Defendants' Memorandum in Opposition to Plaintiff's Itemization of Costs and Fees, pp. 1-2.

B. *Standard*

The determination of a reasonable attorney's fee award involves a two-step process. *See Rutherford v. Harris County,* 197 F.3d 173, 192 (5 th Cir.1999). The court must first determine the "lodestar" by multiplying the reasonable number of hours expended and the reasonable hourly rate for each participating attorney. *See Hensley,* 461 U.S. at 433. This "lodestar" method serves as the initial estimate of a reasonable attorney's fee. *Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

The second step involves the application of twelve factors the Fifth Circuit applies in determining what amount is warranted. *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-719 (5th Cir.1974). These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney

due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount of money involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Once the lodestar is computed by multiplying the reasonable number of hours by a reasonable hourly rate, the court may adjust the award upward or downward depending on its analysis of the twelve factors espoused in Johnson. *Dodge v. Hunt Petroleum Corp.,* 174 F.Supp.2d 505, 508 (N.D.Tex.2001). Thus, in light of the *Johnson* factors, the Court may reduce the award resulting from the lodestar calculation if the documentation of hours worked is inadequate or if the calculation includes hours that were not "reasonably expended." *See Hensley,* 461 U.S. at 433-34.

C. *The Lodestar*

1. *Reasonable Fee*

The party seeking attorney's fees has the burden of establishing the reasonableness of the fees by "submitting evidence supporting the hours worked and the rates claimed." *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3rd Cir.1990) (citing *Hensley,* 461 U.S. at 433). Thus, counsel for the plaintiff "must produce satisfactory evidence--in addition to [their] own affidavits--that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson,* 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Watkins v. Fordice,* 7 F.3d 453, 457 (5th Cir.1993).

*4 The Court must determine the reasonable number of hours expended in the litigation and the reasonable hourly rate for the participating attorneys. *See Louisiana Power & Light Co. v. Kellstrom,* 50 F.3d 319, 324 (5th Cir.1995). The lodestar is then computed by multiplying the number of hours by the reasonable hourly rate. *Id.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 23095590 (E.D.La.)
(Cite as: 2003 WL 23095590 (E.D.La.))

Page 4

*2. Reasonable Hourly Rate*

Attorneys' fees are to be calculated at the prevailing market rates in the relevant community for similar services by attorneys of reasonably comparable skills, experience, and reputation. *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). In the instant case, it is uncontested that the relevant community here is the New Orleans, Louisiana legal market.

The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates. *See NAACP v. City of Evergreen,* 812 F.2d 1332, 1338 (11th Cir.1987). Satisfactory evidence of the reasonableness of the rate, at a minimum, is more than the affidavit of the attorney performing the work. *Norman v. Housing Authority of City of Montgomery,* 836 F.2d 1292, 1299 (11th Cir.1988) (citing *Blum,* 465 U.S. at 896 n. 11)). It must also speak to rates actually billed and paid in similar lawsuits. Thus, testimony that a given fee is reasonable is not satisfactory evidence of market rates. *See Hensley,* 461 U.S. at 439 n. 15.

Evidence of rates may be adduced through direct or opinion evidence as to what local attorneys charge under similar circumstances. The weight to be given to the opinion evidence is affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breath of the sample of which the expert has knowledge. *Norman,* 836 F.2d at 1299.

a. Plaintiffs' first memo in support of attorney's fees [FN9]

FN9. Rec. Doc. No. 42.

Here, the plaintiffs' counsel, Les A. Martin, contends that his hourly rate is $200.00. Initially, as proof of the reasonableness of the rate charged, the plaintiffs had only provided the affidavit of Martin, the attorney performing the work. Martin states that he has been a practicing attorney since 1993. He graduated with honors from Loyola University, serving on the Law Review Board in 1993 as a Case Note/Quantum Editor.

Martin further states that during his first five years of practice with Cossich & Associates, he was billed at the rate of $125.00, and that after his first five years, his hourly rate has been between $150.00 and $200.00 per hour.

Additionally, Martin offers that upon information and belief, opposing counsel is charging Navigators in excess of $150.00 per hour. Finally, Martin states that given the facts of the case, in attempting to set aside a release, he would charge a rate of $200.00 per hour due to the difficulty in setting aside a release, the vigorous defense presented by counsel for defendant, and the special knowledge of maritime law required to prosecute this case. [FN10]

FN10. *See* Rec. Doc. No.42, Memorandum in Support of Award of Attorneys' Fees and Costs in Conjunction with Plaintiffs' Motions to Compel, and to File Itemization of Costs and Fees in Accordance with Local 54.2, Affidavit of Les A. Martin.

b. Plaintiffs' supplemental memo in support of attorney's fees

*5 On October 28, 2003, the plaintiffs filed a Motion for Leave to Supplement Record to Provide Court with Sufficient Evidence of Rates Charged in Similar Cases by Other Local Attorneys with Similar Experience, Skill, and Reputation. [FN11] In this motion, Martin submitted an additional affidavit. Martin pointed out that Mr. Rufus Harris, counsel for Jen Marine, charges an hourly rate of $165.00. The plaintiffs aver that they would be satisfied should this Court set this fee as the base rate under the lodestar analysis. [FN12]

FN11. Rec. Doc. No. 62.

FN12. *See* Rec. Doc. No. 62, Motion for Leave to Supplement Record to Provide Court with Sufficient Evidence of Rates Charged in Similar Cases by Other Local Attorneys with Similar Experience, Skill, and Reputation, p. 1.

Martin further attests that he has spoken with members

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 5
2003 WL 23095590 (E.D.La.)
(Cite as: 2003 WL 23095590 (E.D.La.))

of the firm of King, LeBlanc, and Bland, and the firm of Lugenbuhl, Burke, Wheaton, Peck and Rankin, and their hourly rates range from $175-$225 dollars. Further, without specifying, Martin states that other attorneys in the legal community charge hourly rates of $175-$225 dollars.

Martin also states that at the time Larry Kerner (plaintiff) came to him, he had signed a Receipt and Release releasing all of his rights against the defendants. In order to prevail in Mr. Kerner's claim, the Receipt and Release had to be set aside. Martin attests that on August 27, 2003, Judge Duval set aside the release, and that much of the documentation obtained in the Motion to Compel was used to support the setting aside of the Receipt and Release.

Although Martin states in his affidavit that he learned that other attorneys in the relevant legal community charge hourly rates between $175-$225, Martin does not inform the Court if those attorneys charge those rates in similar cases. Further, Martin does not inform the Court whether these attorneys are of reasonably comparable skills, experience, and reputation. *See Blum* 465 U.S. at 895 (1984).

Jen Marine opposes the $200 rate requested by Martin contending that the rate is excessive, and arguing that Martin has provided no evidence, other than his own affidavits, that such a rate is in line with prevailing market rates in New Orleans.

A review of cases decided in this Court reveals that Martin's requested hourly rate is excessive and unreasonable. In *Cross Equipment Ltd. v. Hyundai Merchant Marine (America) Inc.*, the Court found that the hourly rate of $150 charged by the lead attorney who had primarily practiced maritime law for 24 years was reasonable. The Court took judicial notice of the fact that this rate is "indeed fair and reasonable and 'below-market' for attorneys with comparable maritime experience practicing maritime law in New Orleans." 1999 WL 169433 at *1 (E.D.La.1999). *see also Smith v. Berry Co.*, No. 96-1899, 1997 WL 736697, at *4 (E.D.La. Nov.21, 1997) (holding that $150 per hour was reasonable in an employment discrimination action after finding that counsel had practiced employment

discrimination law for eleven years and had become an authority in the field); *see also United States ex rel. Garibaldi v. Orleans Parish Sch. Bd.*, 46 F.Supp.2d 546, 569 (E.D.La.1999), *vacated on other grounds*, 244 F.3d 486 (5th Cir.2001) (awarding high end hourly rates of $250, $175 and $150 for partner-level attorneys in quit claim case because of the particular difficulty of the case and the lucrative and less risky business the lawyers were precluded from accepting); *Police Ass'n of New Orleans v. City of New Orleans*, 951 F.Supp. 622, 628 (E.D.La.1997) (holding that $150 per hour was reasonable in a Section 1983 action based upon plaintiffs' counsel's 22 years of experience as a civil rights attorney and the Judge's own knowledge of attorney's fees in this district).

**\*6** Considering the foregoing, the Court finds it appropriate to reduce the rate to $150.00 as this rate appears to be reasonable based on Martin's qualifications and experience and the prevailing market rates in this legal community at the time he performed the work.

### 3. Reasonable Number of Hours Expended

The party seeking attorneys' fees must present adequately documented time records to the court. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir.1993). As a general proposition, all time that is excessive, duplicative or inadequately documented should be excluded from any award of attorney's fees. *Raspanti v. United States Dept. of the Army*, 2001 WL 1081375, at *6. Attorneys must exercise "billing judgment" by "writing off unproductive, excessive, or redundant hours" when seeking fee awards. *Id.* (citing *Walker v. United States Dep't of Housing & Urban Dev.*, 99 F.3d 761, 769 (5th Cir.1996)). The fee seeker's attorneys are "charged with the burden of showing the reasonableness of the hours they bill and, accordingly, are charged with proving that they exercised billing judgment." *Walker*, 99 F.3d at 770. When billing judgment is lacking, the court must exclude from the lodestar calculation the hours that were not reasonably expended. *Hensley*, 461 U.S. at 434.

### a. Hours Not Expended on Motion to Compel

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 23095590 (E.D.La.)
**(Cite as: 2003 WL 23095590 (E.D.La.))**

Page 6

The defendant argues, and the Court agrees, that several of the time entries submitted by the plaintiffs are not in connection with the motion to compel. These entries include the time spent on tasks such as preparing interrogatories and requests for production of documents to the defendant, preparing a subpoena duces tecum to Jack Hoyle, reviewing a privilege log of the defendant in response to the subpoena, preparing for and traveling to and from the depositions of Jack Hoyle and Neil Wiseman.

These expenses would have been incurred in the discovery process regardless of the fact that the plaintiffs later found the need to file the motion to compel. Therefore, the Court will reduce the number of hours Les Martin submitted by 13.5 hours. [FN13]

> FN13. The following dates correspond to the hours reduced: May 02, 2003; May 27, 2003; June 10, 2003; June 12, 2003; June 13, 2003; June 23, 2003; and June 24, 2003.

b. Excessive/Duplicative Hours

A review of the time sheets submitted by Les Martin indicates that several of the entries are excessive and duplicative. For instance, Martin claims to have expended 4.3 hours on June 25, 2003, on legal research regarding the motion to compel and 3.8 hours on June 26, 2003, on additional legal research on the motion to compel. Further on June 26, Martin claims to have spent 0.6 hours preparing the motion to compel, 0.2 hours preparing the notice of hearing, 0.4 hours preparing the order for the motion, and 2.6 hours dictating a draft of the memorandum in support of the motion.

From June 27 through July 1, 2003, Martin claims to have expended 2.8 hours continuing to dictate the draft of the memorandum in support of the motion, 3.2 hours reviewing and revising the draft, 4 .3 hours continuing to review and revise the draft, and 2.5 hours preparing and filing the final draft of the motion, memorandum, notice of hearing and order.

**\*7** Initially, the Court notes that from the time Martin began his legal research on the motion to compel to the

time the motion was actually filed, Martin submitted a total of 24.7 hours. The plaintiffs argue that the Memorandum in Support of the Motion to Compel [FN14] was in excess of twenty pages, and extensive legal research was conducted regarding the motion.

> FN14. Rec. Doc. No. 15.

The Motion to Compel, including the Memorandum in support thereof, was 23 pages in length. However, the Court notes that approximately the first nine pages of the motion is a recitation of the factual and procedural history. Further, although the plaintiffs claim that extensive legal research was conducted on the motion, the Court notes that only a single case was cited in the entire 23 pages. Additionally, in the motion itself, the plaintiffs admit that the one case cited deals with many of the issues in the motion. [FN15]

> FN15. *Id.* at p. 9.

The Court finds that the 24.7 hours spent researching, preparing, dictating, reviewing and revising the Motion to Compel are excessive and duplicative, and should be reduced by 50%. Thus, the plaintiffs may recover a total of 12.35 hours for the time entries from June 25 through July 1, 2003.

c. Travel Time

The plaintiffs also seek to recover for 2.5 hours expended by counsel on July 23, 2003, for travel to/from and hearing on Motion to Compel. Specifically, Martin claims to have spent 1 hour traveling to and from the hearing, and 1.5 hours at the hearing. The Court notes, however, that Martin's office is located in Gretna, Louisiana, no more than 7 miles from New Orleans. Because Martin did not specify in his bill of costs where he was traveling from, the Court will assume he traveled from his office in Gretna. Therefore, the travel time will be reduced to 0.5 hours as opposed to 1 hour.

The plaintiffs request reimbursement at Martin's full hourly rate for the time expended by traveling to New Orleans for the hearing. However, attorney travel time should be compensated at a lower rate than legal work.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 23095590 (E.D.La.)
(Cite as: 2003 WL 23095590 (E.D.La.))

Courts in this Circuit typically compensate travel time at 50% of the attorney's rate in the absence of documentation that any legal work was accomplished during travel time. *Watkins v. Fordice,* 7 F.3d 453, 459 (5th Cir.1993) (in Voting Rights Act case involving legislative redistricting, compensation for attorneys travel time was awarded at one half of the hourly rate allowed for the attorneys); *Jiminez v. Paw-Paw's Camper City, Inc.,* 2002 WL 257691, at *23 (E.D.La. Feb.22, 2002) (awarding attorney fees for travel time at one-half of normal hourly rate in employment discrimination case); *Paul v. CMC Manufacturing, Inc.,* 1998 WL 527102, at *2 (N.D.Miss. Aug.6, 1998) (travel time should be billed at one-half the hourly rate of the lawyer involved); *Jackson v. Capital Bank & Trust Co.,* 1994 WL 118332, at *26-27 (E.D.La. March 30, 1994).

The plaintiffs provided no documentation that any legal work was accomplished during travel time in this case. Therefore, Martin's rate for the time entries that reflect travel time will be reduced by 50%. The plaintiffs may recover for 0.5 hours at a rate of $75.00 .[FN16] Accordingly, for the July 23, 2003 time entry, the plaintiffs are entitled to attorney's fees in the amount of $262.50.

> FN16. The 0.5 hours represents the approximate amount of time it should have taken Martin to travel to and from Gretna, Louisiana, no more than 7 miles away.

*8 In summary, the 55.8 hours requested by the plaintiffs should be reduced to 29.45 hours. Therefore, the lodestar amount of reasonable hours multiplied by the reasonable rates set forth above is generally reasonable in this case.

4. *The* Johnson *Factors*

The plaintiffs, however, argue that in applying the Johnson factors, the lodestar amount should be adjusted upwards based on the complexity of the matter, the fact that the case was taken on a contingency fee basis, and the success obtained in the matter.

"The lodestar ... is presumptively reasonable", and

should be enhanced or reduced only in exceptional cases. *Watkins v. Fordice,* 7 F.3d 453, 459 (5th Cir.1993) (citing *City of Burlington v. Dague,* 505 U.S. 557, 567, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992)). Further, "three of the Johnson factors, complexity of the issues, results obtained and preclusion of other employment, are fully reflected and subsumed in the lodestar amount." *Jimenez,* 2002 WL 257691 at *18 (citing *Heidtman v. County of El Paso,* 171 F.3d 1038, 1043 (5th Cir.1999)). Therefore, the complexity of the matters in this case and the results obtained have been considered in the initial amount.

With regard to the fact that Martin undertook the case on a contingency fee basis, this is no reason to adjust the lodestar upwards. The Supreme Court barred the use of this factor after the *Johnson* case was decided. *Walker v. United States Dep't of Housing & Urban Dev.,* 99 F.3d 761, 772 (5th Cir.1996) (citing *City of Burlington,* 505 U.S. at 567; *Shipes v. Trinity,* 987 f.2d 311, 323 (5th Cir.1993)). Considering the *Johnson* factors, the Court is of the opinion that the lodestar should not be modified.

D. *Expenses/Costs*

Lastly, the plaintiffs seek to recover expenses and costs in the amount of $989.68. This amount includes the following: $187 for photocopying; $35.20 for mileage/travel, parking and toll for the depositions of Jack Hoyle and Neil Wiseman; $20.78 for mileage/travel and parking for the Motion to Compel; and $745.90 for the deposition transcripts of Neil Wiseman and Jack Hoyle. The defendant objects to the plaintiffs' request to recover for the costs and expenses incurred, contending that copying expenses, travel expenses of attorneys, mileage, and parking costs are not recoverable. [FN17]

> FN17. *See* Rec. Doc. No. 45, p. 7.

1. Mileage/Travel Expenses

Federal Rule of Civil Procedure 54(d) states that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Taxation of costs under Rule 54 is within the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 23095590 (E.D.La.)
(Cite as: 2003 WL 23095590 (E.D.La.))

Page 8

district court's discretion. *Breaux v. City of Garland, 205 F.3d 150, 164 (5th Cir.), cert. denied, 531 U.S. 816, 121 S.Ct. 52, 148 L.Ed.2d 21 (2000).* Under 28 U.S.C. § 1920, a court may not tax costs for travel expenses because these are overhead costs not litigation costs. *Embotelladora agral Regiomontana v. Sharp Capital, Inc., 952 F.Supp. 415, 418 (N.D.Tex.1997); see also Coats v. Penrod Drilling Corp., 5 F.3d 877, 891 (5th Cir.1993); Jiminez v. Paw-Paw's Camper City, Inc., 2002 WL 257691 at ----27-28 (E.D.La.2002).*

**\*9** The Court notes at the outset that the $35.20 the plaintiffs seek for the travel, parking and toll for the depositions of Jack Hoyle and Neil Wiseman, would have been incurred regardless of the need to later file a motion to compel. This amount is therefore, not recoverable.

The plaintiffs also request $20.78 for travel to and parking for the Motion to Compel. However, because this amount is an overhead cost, the plaintiffs cannot recover.

2. Photocopying Expense

The plaintiffs seek to recover $187.80 in photocopying expenses. However, the plaintiffs may not recover copy expenses. In his billing statement, Martin refers to this expense simply as "Photocopying Expense." He indicates that 939 pages were copied at .20 cents per page. However, he has failed to state exactly what he copied or the reason the copies were made. Thus, Martin has failed to substantiate these expenses. *See Fogelman v. ARAMCO, 920 F.2d 278, 286 (5th Cir.1991)* (discussing award of costs under § 1920(4) and holding that "[w]hile we certainly do not expect a prevailing party to identify every xerox copy ... we do require some demonstration that reproduction costs necessarily result from that litigation"). In light of the plaintiffs' failure to support their allegation that copy expenses were reasonably incurred, the request for reimbursement of such expenses will be denied.

3. Transcript Costs

The plaintiffs seek to recover $745.90 for the deposition transcripts of Jack Hoyle and Neil Wiseman,

both taken prior to the Motion to Compel. For similar reasons stated above, these costs would have been incurred by the plaintiffs in the normal course of discovery if they chose to have copies of these transcripts. These costs, therefore, are not recoverable.

Accordingly,

IT IS ORDERED that the Motion to Compel Response to Subpoena and to Compel Responses to Questions Presented to Jack Hoyle and Neil Wiseman at their Depositions, and for Attorney's Fees, Costs and Discovery Sanctions (doc. # 15) is GRANTED IN PART and DENIED IN PART as follows:

1) GRANTED to the extent the plaintiff seeks to recover attorney's fees. The plaintiffs are entitled to recover for 28.95 hours at an hourly rate of $150.00, and 0.5 hours at an hourly rate of $75.00, or an amount of $4,380.00.

2) DENIED to the extent the plaintiffs seek to recover costs in the amount of $989.68.

**Motions, Pleadings and Filings (Back to top)**

. 2004 WL 2467637 (Trial Pleading) Complaint for Intervention (Aug. 18, 2004)

. 2004 WL 2467632 (Trial Pleading) Amended Answer to Cross-Claim and Third Party Complaint (Jul. 22, 2004)

. 2004 WL 2467624 (Trial Pleading) Answer to Cross-Claim and Third Party Complaint (Jul. 07, 2004)

. 2004 WL 2467604 (Trial Pleading) Cross-Claim (Jun. 16, 2004)

. 2004 WL 2467617 (Trial Pleading) Third Party Complaint (Jun. 16, 2004)

. 2004 WL 2467594 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Opposition to Jen Marine's Motion to Review and Set Aside Magistrate's Order of Award of Attorney's Fees (Jan. 27, 2004)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

. 2004 WL 2467576 (Trial Pleading) Answer to Original and Supplemental and Amended Complaints (Jan. 20, 2004)

. 2004 WL 2467587 (Trial Pleading) A&A Oilfield Contractors' Answer to Supplemental and Amended Complaint (Jan. 20, 2004)

. 2004 WL 2467568 (Trial Motion, Memorandum and Affidavit) Brief in Reply to Jen Marine's Reply Brief (Jan. 09, 2004)

. 2004 WL 2467561 (Trial Motion, Memorandum and Affidavit) Defendant Jen Marine's Rely Brief (Jan. 07, 2004)

. 2003 WL 23860422 (Trial Motion, Memorandum and Affidavit) Plaintiff Larry Kerner's Opposition to Jen Marine's Motion for Summary Judgment on the Issue of Maintenance and Cure (Dec. 29, 2003)

. 2003 WL 23860404 (Trial Pleading) Navigators Insurance Services of Texas, Inc.'s Answer to Second Supplemental and Amended Complaint (Dec. 10, 2003)

. 2003 WL 23860390 (Trial Pleading) Second Supplemental and Amended Complaint (Dec. 03, 2003)

. 2003 WL 23860376 (Trial Motion, Memorandum and Affidavit) Defendant Jen Marine, L.L.C.'s Opposition to Plaintiff Kerner's Motion to Supplement Record (Nov. 04, 2003)

. 2003 WL 23860364 (Trial Pleading) Supplemental and Amended Complaint (Oct. 22, 2003)

. 2003 WL 23860347 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Motion Awarding Attorney's Fees and Costs and to Include the Costs of the Transcripts of Jack Hoyle and Neil Wiseman (Sep. 11, 2003)

. 2003 WL 23860301 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Award of Attorneys' Fees and Costs in Conjunction With Plaintiffs' Motions to Compel, and to File Itemization of Costs and Fees in Accordance With Local 54.2 (Sep.

08, 2003)

. 2003 WL 23860315 (Trial Pleading) First Amended Complaint for Damages (Sep. 08, 2003)

. 2003 WL 23860329 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum in Opposition to Plaintiff's Itemization of Costs and Fees (Sep. 08, 2003)

. 2003 WL 23860289 (Trial Pleading) Answer to First Amended Complaint for Damages (Sep. 04, 2003)

. 2003 WL 23860271 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to Defendant Jen Marine's Motion to Review and Set Aside Magistrate's Order (Sep. 03, 2003)

. 2003 WL 23860258 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to Jen Marine's Motion for Summary Judgment (Jul. 30, 2003)

. 2003 WL 23860243 (Trial Motion, Memorandum and Affidavit) Defendant Jen Marine, L.L.C.'s Memorandum in Opposition to Plaintiff's Motion to Compel (Jul. 16, 2003)

. 2003 WL 23860213 (Trial Motion, Memorandum and Affidavit) Defendant Jen Marine, L.L.C.'s Memorandum in Opposition to Plaintiff's Motion for Protective Order (Jul. 15, 2003)

. 2003 WL 23860227 (Trial Motion, Memorandum and Affidavit) Defendant Jen Marine, L.L.C.'s Memorandum in Opposition to Kerner's Motion to Set Aside Jones Act Release (Jul. 15, 2003)

. 2003 WL 23860188 (Trial Pleading) Answer to Counter-Claim (Jul. 01, 2003)

. 2003 WL 23860170 (Trial Pleading) Answer and Counter-Claim (May. 15, 2003)

. 2003 WL 23860151 (Trial Pleading) Third Party Complaint (Apr. 30, 2003)

. 2003 WL 23863182 (Trial Pleading) Complaint (Apr. 21, 2003)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 23095590 (E.D.La.)
**(Cite as: 2003 WL 23095590 (E.D.La.))**

. 2:03CV01127 (Docket)

(Apr. 21, 2003)

. 2003 WL 23860131 (Trial Pleading) Answer (Feb. 06, 2003)

. 2003 WL 23860115 (Trial Pleading) Complaint for Damages (Jan. 03, 2003)

. 2:03CV00018 (Docket)

(Jan. 03, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 1

**CondenseIt™**

---

**Page 1**

```
1              IN THE UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF NEW JERSEY

3                          - - -

4    JAN KOPACZ               :   Civil Action

5          v.                 :

6    DELAWARE RIVER AND BAY    :
     AUTHORITY                     No. 03-CV-4858 (SSB)
7                             :
                                   - - -
8              Wednesday, March 24, 2004

9                          - - -

10

11         Deposition of JAN KOPACZ, taken at the

12   Delaware River and Bay Authority, Sandman Boulevard,

13   North Cape May, New Jersey 08204, on the above date,

14   beginning at 11:45 p.m., before Brad Tratenberg,

15   Court Reporter and Notary Public.

16                         - - -

17

18

19

20

21
22            BRAD TRATENBERG
                Court Reporter
23         115 Cynwyd Road, Suite 10
              Bala Cynwyd, PA 19004
24        (215)496-0218   Fax(610)617-0607
```

---

**Page 2**

```
1    APPEARANCES:

2         E. ALFRED SMITH, ESQ.
          of E. ALFRED SMITH & ASSOCIATES
3            1333 Race Street
             Philadelphia, Pennsylvania  19107
4               Counsel for Plaintiff

5         MARY ELISA REEVES, ESQ.
          of DONNA ADELSBERGER & ASSOCIATES
6            6 Royal Avenue
             Glenside, Pennsylvania  19038
7               Counsel for Defendant

8

9    ALSO PRESENT:

10        Edward Ledwon

11

12

13            (It is stipulated by and between

14   counsel for the respective parties that

15   signing, sealing, certification and filing

16   are waived; and that all objections, except

17   as to the form of the question, are reserved

18   until the time of trial.)

19                      - - -

20            ... JAN KOPACZ, having been duly

21   sworn, was examined and testified as follows:

22   BY MS. REEVES:

23   Q    My name is Lisa Reeves.  We've just met and,
24   as you know, I represent the Delaware River and Bay
```

---

**Page 3**

```
1    Authority in connection with a claim that you've made

2    concerning an incident on August 9, 2002.  Have you

3    ever given deposition testimony before?

4    A    Yes.

5    Q    On how many occasions?

6    A    One, I believe.

7    Q    Can you tell me the circumstances of that

8    deposition?

9    A    It was to State Farm.  And I've given some

10   depositions on behalf of the government on earlier

11   jobs.

12   Q    And in those depositions for the government,

13   you were being deposed as a witness?

14   A    Yes.

15   Q    Well, you may know the rules and your

16   attorney may have told them to you, but let me just

17   lay them out for the record.  As you can see, the

18   court reporter is taking down everything we say word

19   for word.  So all of your answers have to be verbal.

20   Do you understand that?

21   A    Yes.

22   Q    If I ask you any questions where you don't

23   understand what I'm asking, just tell me that and

24   I'll try to rephrase my question, because if you do
```

---

**Page 4**

```
1    answer, the court and anyone reading the deposition

2    will assume that you've understood my question.  Do

3    you understand that?

4    A    Yes.

5    Q    If you'd like to take a break at any time,

6    just let me know.  It's not meant to be a marathon.

7    So if you need a break, just tell me that.

8            Are you on any medication today or is

9    there any other reason that you cannot listen and

10   understand my questions and answer them truthfully

11   and accurately?

12   A    I'm on medication but it won't affect the

13   deposition.

14   Q    What kind of medication are you on?

15   A    Ibuprofen and blood pressure medicine.

16   Q    Anything else?

17   A    Prostate medicine.

18   Q    Anything else?

19   A    No, not that I can think of.  I've taken

20   other medicines but generally --

21   Q    What other medications do you take?

22   A    Lipitor.  Phenasteroid.

23   Q    What is that for?

24   A    Prostate.  I take a couple of medicines in a
```

Condenselt

1  & Hoffman or anyone else.
2  Q    Other than the incident at Vane Brothers, had
3  you ever had any other problems with your lower back,
4  or your neck for that matter?
5  A    With my neck and my upper back due to an
6  automobile accident.  I believe it was 1999 and it
7  was either in North Carolina or South Carolina.  A
8  truck ran myself and another vehicle off of an
9  interstate highway into the median, which was
10 being -- the median was under construction.  He hit
11 my vehicle, spun it around into the median, which was
12 all torn up.  And I injured my neck and my -- because
13 I was holding onto the steering wheel real tight, it
14 injured my upper back between the shoulder blades.
15 Q    And in that case, you made a PIP claim
16 against GE then as well, correct?
17 A    I don't think GE was my insurance carrier
18 then.  But I did make one with my insurance carrier.
19 It was either Colonial Penn or GE.  And they paid my
20 medical because they said the other guy was from out
21 of state, he was from Virginia, and they paid
22 5,000-something or 6,000-some dollars for pain and
23 injury through my lawyer, of which I got about 38 or
24 39 hundred.

1  Q    But that 6,000 was actually from the owner of
2  the truck?
3  A    I don't know.  All I know is my lawyer sent
4  me a check.
5  Q    For $6,000?
6  A    No.
7  Q    Or for your share of the $6,000?
8  A    Yes.  And somebody paid my medical bills.  I
9  got more on that incident because somebody
10 fixed my car.  Came to somewhere around $3,200.
11 Q    Any other accidents or injuries?
12 A    No.
13 Q    Let's go back to your notebook.  The next
14 written page I have is August 20.  It indicates that
15 you faxed a work excuse from Dr. Lopez to the port
16 captain's office?
17 A    Yes.
18       MS. REEVES:  Can we mark this as 19?
19       (Document marked for identification
20    as Kopacz exhibit 19.)
21 BY MS. REEVES:
22 Q    Can you take a look at exhibit 19?  Is that
23 the document that you're referring to in your diary
24 note of August 20?

1  A    Not that I know of.  It's got a fax number on
2  the top.  Delaware River and Bay Authority Police
3  sick leave and injury report.  It's not my
4  handwriting.
5  Q    I think this is a note of a phone
6  conversation.  Down at the bottom, it mentions P. H.
7  Luther or somebody.  Is that the Police Officer
8  Luther you were talking about before, do you know?
9  A    I don't know Luther's last name.  If you
10 could tell me what Luther looks like, I could tell
11 you if it's the same Luther.
12 Q    I don't know what he looks like.
13 A    Okay.  I don't know if it's him then.  Let me
14 look at my notes and see if Luther answered the
15 phone.  No, George Taylor and Captain Woehlcke is who
16 I talked with.
17 Q    I think I gave you the wrong document.  So
18 let me mark this as 20.
19       (Document marked for identification
20    as Kopacz exhibit 20.)
21 BY MS. REEVES:
22 Q    Do you recall if this is the fax that you
23 were discussing with -- well, it indicates you faxed
24 something on the 20th of August, correct, in the

1  diary?
2  A    No.
3  Q    8:43 a.m., the third note down, "Faxed Dr.
4  Lopez's work excuse."
5  A    Well, it's actually dated August 13.  So I
6  don't know if this is the same one.  It's good for
7  8/12 to 8/20.  Maybe I faxed them another one.
8  Q    Well, as I said, if you give me copies of
9  everything, then we'll be able to discern that.
10 A    I'm not sure I have a copy.
11 Q    If you do.
12 A    Obviously I faxed this one to them because it
13 has my computer signature on the bottom where I typed
14 it.  And it was typed, according to the computer,
15 which I don't have any access to change, Tuesday,
16 August 13 and I dated it August 13.  So I can't
17 imagine why I would wait until the 20th to do that.
18 It says to call him or send a fax.  And as he left
19 that number -- anyway, I don't know.
20 Q    And then on the next page, it indicates 5:00
21 p.m., you spoke with Jake Shisha and he said he will
22 fax, I guess, the police report to you.  And then is
23 this your handwriting on this page down towards the
24 bottom where it says, "Why did captain Woehlcke tell

Page 129

1 me the police report will not be released until I
2 make a statement?"
3 A    Yes.
4 Q    Did he tell you that?
5 A    Yes.
6 Q    Were you asked to make a statement about your
7 version of what occurred?
8 A    Yes.
9 Q    Did you make a statement?
10 A    No.
11 Q    Why not?
12 A    Because I made a statement to Dave Oat before
13 I left the boat and Jake Shisha told me not to make
14 any other statements.
15 Q    Did you make a written statement to Dave Oat
16 before you left the boat?
17 A    No.
18 Q    Do you recall that Mr. Ledwon wrote you on
19 several occasions asking you to fill out a statement
20 setting forth your version of that?
21 A    Yes.
22 Q    And did you respond to him?
23 A    No. I forwarded it to Jake Shisha.
24 Q    Have you ever given the ferry a written

Page 130

1 statement of what occurred that day?
2 A    I don't think so, unless Jake Shisha told me
3 to.
4 Q    Would you agree with me that Mr. Ledwon of
5 the Delaware River and Bay Authority sent you four
6 requests for an incident report or a written
7 statement?
8 A    I don't know. Let's see.
9 Q    Okay. Let me mark them first.
10 A    Obviously he did. You got those from Shisha,
11 didn't you?
12 Q    No, I did not. I got them from Mr. Ledwon.
13        (Documents marked for identification
14        as Kopacz exhibits 21 through 23.)
15 BY MS. REEVES:
16 Q    Let me show you what we've marked as 21, 22
17 and 23. These are Mr. Ledwon's letters requesting a
18 statement from you in reference to the incident in
19 accordance with the DRBA incident reporting process
20 and stating that he encloses a blue injured, slash,
21 witness statement card for you.
22 A    Okay, you're going to have to let me read
23 these and then I'll look at you when you talk to me.
24 Okay?

Page 131

1 Q    Sure. Take your time.
2 A    What was that?
3 Q    Take your time.
4 A    Okay.
5 Q    My question was, you never provided a written
6 statement to the DRBA despite those requests?
7 A    My answer is there's two reasons for that.
8 One, any correspondence I got from DRBA I forwarded
9 to Jake Shisha when he was my lawyer. I gave them to
10 Al Smith when he was my lawyer. Jake Shisha told me
11 not to answer them. Number two, this was sent to
12 4590 Highway 1. That's not my residence.
13 Q    Did you ever reside at 4590 Highway 1?
14 A    No.
15 Q    Is it your testimony that you never got any
16 of those letters?
17 A    No.
18 Q    You did not?
19 A    Did not what?
20 Q    Do you recall receiving any of these letters?
21 A    Yes.
22 Q    You do recall receiving them?
23 A    Yes.
24 Q    And you allowed your lawyer to handle

Page 132

1 communications with the DRBA?
2 A    When I finally got these letters sent to this
3 address, which is not my residence, I forwarded them
4 to my lawyer at the time and awaited his response.
5 His response was, "Thank you for sending me this."
6 Q    Looking at the next written page of your
7 diary, August 21, am I correct it mentions an
8 appointment with the PSYC? Is that the psychiatrist?
9 A    Let me look at it and see. It could be the
10 psychiatrist. It could be the physical therapist. I
11 don't remember.
12 Q    And the remainder of that page is your note
13 on your physical condition?
14 A    Well, my physical and my mental condition.
15 Q    And how about the next written page, August
16 22?
17 A    Let me finish this one.
18 Q    Certainly. Take your time.
19 A    You have to uncover your mouth.
20 Q    Take your time.
21 A    All right. I was still wearing the neck
22 brace at this time. I woke up with a headache. At
23 12:15 I had back spasms and headache. Went to sleep
24 again around 12:30. Woke up again at 3:45 with back

# EXHIBIT 2

## AFFIDAVIT OF BONNIE MILLER

**STATE OF DELAWARE**   :
                                                :
**COUNTY OF** *New Castle*:

I, Bonnie Miller, hereby depose and state as follows:

1.   I am the insurance manager for the DRBA, and in that capacity I handle all marine and other insurance claims against the DRBA.

2.   John Schaffer of Lamorte, Burns assists us by adjusting maritime claims which are below our deductible, and to provide us with advice on the handling of all maritime claims.

3.   Although he does not respresent the DRBA directly in these cases, we do take advantage of his legal and maritime expertise in advising us on how to handle these claims.

4.   According to DRBA policy, incident reports and witness statements are required for all accidents or incidents which occur onboard any of our ferries, whether or not they are expected to result in claims.

5.   I do not notify Lamorte, Burns of all incidents or accidents, but only forward those that I believe are likely to lead to a claim or litigation.

6.   The DRBA relies on John Schaffer to provide advice and guidance on maritime claims that are likely to lead to litigation, however, outside counsel is retained when claims are put into suit.

7.   Given the nature of the claim and the fact that it was disputed by Mr. Swett and the eyewitnesses, I forwarded this claim to John Schaffer on August 14, 2002.  At that time, I was aware that Mr. Kopacz had an attorney, and that his intial intention was to pursue a claim against Mr. Swett and his insurance carrier, State Farm.

8.   Shortly thereafter, I was contacted by a claims agent for State Farm.  It was obvious to me that this case would likely result in litigation one way or the other.

9.   I have always expected that my communications with John Schaffer, our underwriters and other DRBA managers would remain confidential.

**IN WITNESS WHEREOF, I have hereunto set my hand and seal**

this ___4th___ day of ___APRIL___ , 2005.

_Bonnie L Miller_
**Bonnie Miller**

Sworn to and subscribed

before me this ___4th___ day

of ___APRIL___ , 2005.

_Christine D Johnson_
Notary Public

CHRISTINE D. JOHNSON
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires Sept. 17, 2005

2

# EXHIBIT 3

## AFFIDAVIT OF JOHN SCHAFFER

**STATE OF CONNECTICUT**　　　:
　　　　　　　　　　　　　　　　:
**COUNTY OF FAIRFIELD**　　　　:

　　　I, John Schaffer, hereby depose and state as follows:

1.　I am a partner in Lamorte Burns & Co., and am currently the Vice President in charge of maritime personal injury matters.

2.　I have been a maritime attorney for over thirty years, and am admitted to the Bars of the Supreme Court of the United States, the United States Court of Appeals for the Second Circuit, New Jersey, New York, the Federal District Courts of New Jersey and of the Southern and Eastern Districts of New York.

3.　I am a member and director of the Maritime Law Association of the United States, and serve as chair of the Marine Torts and Casualties Committee, which includes maritime personal injury law.

4.　A true and correct copy of my curriculum vitae is attached.

5.　I handle all maritime personal injury claims for the DRBA, including those below the $10,000 deductible. This includes analyzing claims from a legal and practical standpoint, rendering an opinion as to the DRBA's potential liability and exposure.

6.　Where possible, I endeavor to settle claims with the claimant or his attorney, and when cases cannot be settled, I advise the DRBA as to when outside counsel should be appointed.

7.　I also inform and advise the DRBA's insurance company of any claims which I believe might result in litigation.

8.　On August 14, 2002, I was advised by Bonnie Miller of the events of August 9, 2002 involving Jan Kopacz. At the time, I learned that Mr. Kopacz had already retained an attorney.

9.　I passed the claim onto the DRBA's underwriters, and advised them that the claimant was represented by counsel.

10.   Given the nature of the claim, the fact that the vehicle driver and numerous witnesses denied that Mr. Kopacz had been struck or injured by the Swett vehicle, I anticipated that suit would eventually be filed against the DRBA by Mr. Swett, Mr. Kopacz or both individuals.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this ___1___ day of ___April___, 2005.

_____
John Schaffer

Sworn to and subscribed before me this ___1st___ day of ___April___, 2005.

_____
Notary Public

MARGARET E. BELLWOOD
NOTARY PUBLIC
Account # 43248
My Commission Expires
November 30, 2008

2

# EXHIBIT 4

Oct. 29-02 10:42A                                                                                                P. 01

LAW OFFICES

# TABAK & MELLUSI

71 HUDSON STREET

NEW YORK, NEW YORK 10013-2100

TEL. # (212) 962-1590

FAX # (212) 385-0920

SHELDON TABAK
RALPH J. MELLUSI
STEPHEN B ROBERTS
JACOB SHISHA

October 29, 2002

**VIA FAX (302) 571-6420**

The Delaware River & Bay Authority
Post Office Box 71
New Castle, Delaware 19720

Attention: Linda H. Murphy
Director of Human Resources

  Re: JAN KOPACZ
  MV-DELAWARE
  D/I: 8/9/02
  <u>OUR FILE NO: S2128.02</u>

Dear Ms. Murphy:

  We represent Jan Kopacz, with respect to an accident that occurred while he was working aboard the MV Delaware on August 9, 2002. As you may be aware, a passenger aboard the vessel backed his car into the Mr. Kopacz. He has been declared not fit for duty and has been undergoing physical therapy. He is due to see his physician on November 4, 2002 at which time his duty status will be evaluated.

  Since this is a work-related accident, this claim comes under the Jones Act and the doctrine of Maintenance and Cure. To date, Mr. Kopacz has not made a claim for maintenance and cure because he has been collecting his accrued sick time. His sick time has run out, however, since a vehicle struck him, he has elected, to recover from no-fault, any remaining loss of wages. Since this is a work-related injury we do not believe that an FMLA leave is applicable. Mr. Kopacz, is entitled to keep his job until such time that he is found fit for duty by a physician of his choosing under the Jones Act. We are hopeful he will be found fit for duty on November 4, 2002 .

October 29, 2002
Page 2 of 2

       We thank you for your considerations and request that you call me at your convenience to discuss this matter.

Very truly yours,

TABAK & MELLUSI

Jacob Shisha

cc:    Jan Kopacz

# EXHIBIT 5

| DOCUMENT | DATE | SUBJECT MATTER | PRIVILEGE CLAIMED |
|---|---|---|---|
| Letter from John Schaffer, Esq. to an insurance investigative service | 7/8/03 | investigation of claimant | material gathered in anticipation of litigation |
| Fax to John Schaffer, Esq. from insurance investigative service | 7/9/03 | " | " |
| Notes of John Schaffer, Esq. | various | claim | mental impression of attorney/claims adjuster; attorney work product, material generated in anticipation of litigation |
| E-mail from John Schaffer, Esq. to Bonnie Miller of DRBA | 6/30/03 | claim | attorney/client privilege, work product, material generated in anticipation of litigation |
| E-mail from Bonnie Miller to John Schaffer, Esq. | 6/27/03 | claim | attorney/client privilege, work product, material generated in anticipation of litigation |
| Letter from Miller to Schaffer, Karen Hildebrandt of Thomas Miller (America) Inc. and Judy Marvel of Harry David Zutz Insuarnce Co. | 8/26/03 | claim | attorney/client privilege, work product, material generated in anticipation of litigation |
| Correspondence from Miller to Schaffer | 11/4/02 | claim | attorney/client privilege, work product, material generated in anticipation of litigation |
| Correspondence from Miller to Schaffer | 8/1/402 | claim | attorney/client privilege, work product, material generated in anticipation of litigation |

1

| Description | Date | | Privilege |
|---|---|---|---|
| Correspondence from Miller to Michael Houghton, Esq., cc: Trudy Spence Parker of DRBA, Schaffer, Hildebrandt and Ted Zutz of Harry Davide Zutz | 8/29/03 | claim | attorney/client privilege, work product, material generated in anticipation of litigation |
| Correpondence from Schaffer to Miller | 8/15/02 | claim | attorney/client privilege, work product, material generated in anticipation of litigation |
| Correspondence from Schaffer to Hildebrandt, cc: Miller and Marvel | 2/12/03 | Subpoena from Delaware Department of Insurance Fraud Prevention | attorney/client privilege, work product, material generated in anticipation of litigation |
| Correspondence from Schaffer to Miller | 7/10/03 | claim | attorney/client privilege, work product, material generated in anticipation of litigation |
| Correspondence to Medical Auditor from Schaffer, cc: Hildebrandt, Marvel and Miller | 9/8/03 | claim | work product, material generated in anticipation of litigation |
| Correspondence from Schaffer to Miller | 9/4/03 | claim | attorney/client privilege, work product, material generated in anticipation of litigation |
| Correspondence from Trudy Spence-Parker of DRBA to Mike Houghton, Esq. | undated | claim | attorney/client privilege, work product, material generated in anticipation of litigation |
| E-mail from Spence-Parker to Brian McEwing, cc: James Walls and Steve Russell (all of DRBA) | 8/27/03 | Subpoena from Delaware Department of Insurance Fraud Prevention | material generated in anticipation of litigation |

| | | | |
|---|---|---|---|
| Internal Memorandum (Chronology of Events) (June-July 2003) | undated | investigation into allegations against Kopacz by other employees | internal confidential memorandum; relevance **PRODUCED AS PER JUDGE DONIO** |
| Correspondence from Captain Pulli to Brian McEwing with statements of other crewmembers | 7/11/03 | investigation into allegations Kopacz by other employees | internal confidential memorandum; relevance **PRODUCED AS PER JUDGE DONIO** |
| E-mail from Mark Whittingham to Leo Long, cc: Brian McEwing, Ed Ledwon, Bonnie Miller | 10/1/02 | claim | work product, material generated in anticipation of litigation |
| E-mail from Long to Ledwon and Whittingham, cc: McEwing, Miller and Linda Murphy | 10/1/02 | claim | work product, material generated in anticipation of litigation |
| E-mail from Long to Woehlcke, Miller and Ledwon, cc: Cox, Whittingham and McEwing | 8/21/02 | claim | work product, material generated in anticipation of litigation |
| E-mail from Long to Miller | 8/26/02 | claim | work product, material generated in anticipation of litigation |
| E-mail from Ledwon to Long | 8/23/02 | claim | work product, material generated in anticipation of litigation |
| E-mail from Long to Ledwon | 8/23/02 | claim | work product, material generated in anticipation of litigation |

3

| E-mail from Woehlcke to Ledwon, Miller, Long, cc: McEwing, Whittingham, Cox | 8/14/02 | claim | work product, material generated in anticipation of litigation |
|---|---|---|---|
| DRBA Claim Status Report | 8/14/02 | claim | work product, material generated in anticipation of litigation |
| E-mail from Ledwon to Miller | 7/02/02 | prior incident | work product, material generated in anticipation of litigation |
| E-mail from Ledwon to McEwing, cc: Miller | 7/18/02 | prior incident | work product, material generated in anticipation of litigation |
| E-mail from Spence-Parker to Micheal Houghton, Esq. | 9/1/03 | response to subpoena from Delaware Department of Insurance Fraud Prevention | attorney–client privilege, work product, material generated in anticipation of litigation |
| Correspondence between Mary Elisa Reeves, Bonnie Miller, John Schaffer and/or Karen Hildebrandt | various | claim | attorney–client privilege, work product, material generated in anticipation of litigation |

**Cast of Characters:**

John Schaffer, Esq of Lamorte Burns is DRBA's attorney/claims handler
Karen Hildebrandt, Esq. of Thomas Miller (Americas) is the attorney/claims handler for the DRBA's P&I Club (underwriter)
Judy Marvel and Ted Zutz of Harry David Zutz Insurance Co. are the DRBA's insurance brokers
Micheal Houghton, Esq. of Morris Nichols Arsht & Tunnel is DRBA's corporate counsel
Mary Elisa Reeves, Esq. of Donna Adelsberger & Associates, PC is DRBA's litigation counsel

4

**DRBA Employees**

Bonnie Miller, Claims and Insurance Manager
Leo Long, former Benefits Director
Linda Murphy, personnel director
Trudy Spence-Parker, Human Resources Director
Brian McEwing, Current Port Captain
James Walls, Chief Operating Officer
Steve Russell, Acting/Ass't Director, Ferry Operations
Captain John Pulli, Ferry Captain
Mark Whittingham, Director of Marine Operations
Rich Woehlcke, former Port Captain
Glen Cox, former Director of Ferry Operations

5