IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAN KOPACZ and CATHY KOPACZ, | : | C.A. No. 04-911 GMS |
| Plaintiffs, | : | Jury Trial Demanded |
| v. | : | |
| DELAWARE RIVER AND BAY AUTHORITY, and CRAIG SWETT, | : | |
| Defendants. | : | |
| JAN KOPACZ, | : | C.A. No. 04-1281 GMS |
| Plaintiff, | : | |
| v. | : | |
| DELAWARE RIVER AND BAY AUTHORITY, | : | |
| Defendant. | : | |

**PLAINTIFF'S TRIAL BRIEF**

**1. The nature of the case**

This is a consolidated case involving two defendants.

Plaintiff is seeking compensatory damages for personal injuries against Delaware River and Bay Authority ("DRBA") for negligence under the Jones Act and for the unseaworthiness of its vessel.

Plaintiff is seeking compensatory damages for personal injuries against Craig Swett

("Swett") under the general maritime law.

Plaintiff is seeking maintenance and cure from DRBA and compensatory and punitive damages, including counsel fees and pre-judgment interest, from DRBA for DRBA's willful failure to pay maintenance and cure.

**2. Contested facts**

While plaintiff was engaged in his job of parking cars on defendant's ferry, MV DELAWARE, he directed a Ford Expedition to park at a designated spot and then went behind the vehicle to await the next car to be directed to a parking space behind the Ford Expedition.

While plaintiff was standing there, the Ford Expedition driven by Swett backed up without warning and struck plaintiff.

Plaintiff was taken to Beebe Memorial Hospital by ambulance and was treated and released. He was considered unable to work for 3 days and given a neck brace to wear for 2 weeks.

Plaintiff was then treated by his family physician, who referred him to an orthopedist. He was out of work until November 25, 2002. Neither his medical bills nor his maintenance payments were paid.

Plaintiff had been discriminated against due to his union activities before the accident, and he gave an Affidavit against some of the witnesses against him for unfair labor practices prior to the accident. There is no legal justification for defendant's failure to pay maintenance and cure because plaintiff became disabled while in the service of a vessel without misconduct on his part.

**3. Liability theories**

<u>As to DRBA</u>

A.  Unseaworthiness

There is an absolute duty on the part of the shipowner to provide a safe and seaworthy vessel and to supply and keep in reasonable order the appliances and equipment appurtenant to the vessel for the safe use of the personnel who were engaged in rendering services aboard the vessel.  <u>Seas Shipping Co. v. Sieracki</u>, 328 U.S. 35 (1946).  This is true even though the shipowner or its agents or employees did not create the unsafe condition, did not know of its condition or had no opportunity to correct it.  This form of liability is not dependent upon any concept of carelessness or negligence.  The warranty of seaworthiness is a species of liability without fault.  <u>Seas Shipping Co. v. Sieracki</u>, supra, and <u>Mahnich v. Southern S.S. Co.</u>, 321 U.S. 96 (1944).

The violation of a Coast Guard regulation may make the vessel unseaworthy.  See 2 Martin J. Norris, The Law of Seaman, 3d §27:20 (CBC 1985).

The causation test for unseaworthiness is that the unseaworthiness must be a substantial factor in producing the injury.

In this case defendant failed to have and enforce rules and procedures which prevented drivers from backing up their cars once they were parked.  DRBA failed to have warnings posted and failed to have signs instructing drivers not to back their cars.  DRBA failed to instruct and train their personnel to do things to prevent drivers from backing up their vehicles after they were parked.  Accordingly, the vessel was not reasonably fit for the purpose intended and was unseaworthy by being inherently unsafe and by permitting the violation of Delaware Code Title 21 §4164.

B. The Jones Act

Defendant has admitted ownership and employment, so the only remaining burden is for plaintiff to prove DRBA's negligence. Negligence in these circumstances is ordinarily doing something that a reasonably prudent person would not have done or failing to do something which a reasonably prudent person would have done under the circumstances. See <u>Gallick v. Baltimore and Ohio R.R. Co.</u>, 372 U.S. 108 (1963).

Furthermore, a shipowner, DRBA, is under an absolute duty to provide its employees with a reasonably safe place to work. See e.g. <u>Brabazon v. Belships Co., Ltd.</u>, 202 F.2d 904 (3rd Cir. 1953).

The causation test is that the negligence need only have played any part, even the slightest, in producing the injury. See <u>Rogers v. Missouri Pacific R.R. Co.</u>, 352 U.S. 500, 507 (1957).

The failure to warn drivers not to back up and to institute and enforce procedures which would have prevented drivers from backing their vehicles once parked created a workplace which was not reasonably safe and was therefore negligent. This more than satisfied the "even the slightest" causation test.

C. Violation of a statutory duty

Delaware Code Title 21 §4184 provides as follows:

§4184. Limitations on backing:

> (a) The driver of a vehicle shall not back the same unless such movement can be made with safety and without interfering with other traffic.

Permitting the breach of a statutory duty imposes absolute liability upon DRBA and does not require proof of negligence. <u>Kernan v. American Dredging Co.</u>, 355 U.S. 426 (1958).

<u>As to Craig Swett</u>

A. The general maritime law

Two tests must be satisfied for maritime jurisdiction to apply: (1) the locality test; and (2) the connection with maritime activity test. The foregoing was first established in <u>Executive Jet Aviation, Inc. v. City of Cleveland</u>, 409 U.S. 249 (1972) and has been reaffirmed in <u>Foremost Ins. Co. v. Richardson</u>, 457 U.S. 668 (1982); <u>Sisson v. Ruby</u>, 497 U.S. 358 (1990) and <u>Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.</u>, 513 U.S. 527 (1995).

Since the accident happened on a vessel which was in navigable waters and occurred while plaintiff was in the course of maritime employment, both tests are satisfied and the maritime jurisdiction attaches.

The most widely cited statement of the standard of care to be applied in general maritime law cases is in <u>Kermarec v. Compagnie Generale Transatlantique</u>, 358 U.S. 625 (1959), and it simply imposes "the duty of exercising reasonable care under the circumstances of each case." The Supreme Court approved this formulation in <u>Federal Marine Terminals, Inc. v. Burnside</u>, 394 U.S. 404, 415 (1969), but it did not further define the contours of the duty. The general principle was reaffirmed in <u>Scindia Steam Nav. Co., Ltd. v. De Los Santos</u>, 451 U.S. 156 (1981), but the Court also observed that "the rule will undergo refinement as it is applied to various categories of cases."

Plaintiff believes that the general definition of negligence would probably suffice in this garden variety negligence case.

However, if the jury finds that Swett violated The Delaware Motor Vehicle Code, this triggers the rule of The Pennsylvania, 86 U.S. (19 Wall.) 125 (1873) which requires the defendant to prove that its fault could not have been one of the causes of the accident. Although the rule of The Pennsylvania was originally intended to apply in maritime collision cases, the rule has been held to apply when a state statute has been violated. Phillips Petroleum Co. v. Stokes Oil Co., 639 F.Supp. 291, 297 (W.D. Ky. 1986) affirmed 863 F.2d 1250 (6th Cir. 1988). See also Skidmre v. Grueninger, 506 F.2d 716 (5th Cir. 1975) and Ranger Ins. Co. v. Exxon Pipeline Co., 760 F.Supp. 97 (W.D. La. 1990) and Armour v. Gradler, 448 F.Supp. 741 (W.D. Pa. 1978).

B. Damages recoverable under the general maritime law.

The damages recoverable under the general maritime law include lost earnings. See Griffith v. Wheeling-Pittsburgh Steel Corp., 452 F.Supp. 841 (W.D. Pa. 1978) modified in part, vacated in part, 610 F.2d 116 (3rd Cir. 1979).

Damages also includes medical expenses.

Pain and suffering and loss of life's pleasures are also recoverable. See Earl v. Bouchard Transp. Co., 917 F.2d 1320, 1326-27 (2d Cir. 1990).

See generally Thomas J. Schoenbaum, Admiralty and Maritime Law 3d Ed. (West 2001).

C. Damages recoverable against DRBA.

These are the same as those available against Swett, although there can be only one recovery.

As to DRBA

A. Plaintiff's claim for maintenance and cure

A recent summary of the law of maintenance and cure by the Third Circuit is found in Deisler v. McCormack Aggregates Co., 54 F.3d 1074 (3rd Cir. 1995). The Court succinctly set forth the law as follows:

> [3, 4] Maintenance and cure are rights given to seaman who become ill or injured in the service of a vessel.[7] "Maintenance is the living allowance for a seaman while he is ashore recovering from injury or illness. *See Vaughan v. Atkinson,* 369 U.S. 527, 531, 82 S.Ct. 997, 1000, 8 L.Ed.2d 88 (1962). Cure is the payment of medical expenses incurred in treating the seaman's injury or illness. *See Calmar S.S. Corp. v. Taylor*, 303 U.S. 525, 528, 58 S.Ct. 651, 653, 82 L.Ed. 993 (1938)." *Barnes v. Andover Co. L.P.,* 900 F.2d 630, 633 (3d Cir. 1990). An employer's obligation to furnish maintenance and cure continues "until the seaman has reached the point of maximum cure, that is until the seaman is cured or his condition is diagnosed as permanent and incurable." *Barnes,* 900 F.2d at 633-34, see also *Vella v. Ford Motor Co.*, 421 U.S. 1, 5, 95 S.Ct. 1381, 1384, 43 L.Ed.2d 682 (1975).
>
> [5] The origins of the duty to provide maintenance and cure have been traced to Justice Story in *Harden v. Gordon*, 11 F.Cas. 480, 482-83 (C.C.D.Me.1823).[8] The Supreme Court first recognized and defined these rights in *The Osceola*, 189 U.S. 158, 175, 23 S.Ct. 483, 487, 47 L.Ed. 760 (1903).[9] "The duty was derived

---

[7] It is undisputed that *Deisler* is a maritime employee who would normally be entitled to maintenance and cure.

[8] For a discussion of the historical underpinnings and evolation of a seaman's right to maintenance and cure see *Cox v. Dravo Corp.*, 517 F.2d 620 (3d Cir. 1975).

[9] In *The Osceola*, a crew member sued for injuries sustained in carrying out an order given by the master. There was no allegation that the mate or the crew were negligent in their execution of the master's order. Rather, plaintiff claimed that the vessel and its owners should be liable for the negligent order of the captain in the course of the navigation or management of the vessel. 189 U.S. AT 159-60, 23 S.Ct. at 483-84. The district court held that the vessel was liable

> from medieval maritime codes," *Barnes*, 900 F.2d at 633, and is interpreted in such a way as to afford injured seamen the maximum protection of the law.
>
> Viewing seamen as wards of admiralty, the Court has emphasized that the right to maintenance and cure must be construed liberally and has consistently expanded the scope of the right. Thus, today a shipowner is obliged to pay maintenance and cure regardless of any fault on its part; only wilful misconduct on the part of the seaman will deprive him of its protection.
>
> *Id.* (citations omitted). Although conditions have clearly changed since this concept was first introduced into law, the right of recovery for maintenance and cure has continued to be a fundamental component of the relationship between employees and employers at admiralty. 54 F.3d 1074 (3rd Cir. 1995)

Traditional instances of denial of maintenance and cure for willful misconduct are intoxication, venereal disease and fighting. See <u>Warren v. United States</u>, 340 U.S. 523, 528 (1951); <u>Farrell v. United States</u>, 336 U.S. 511 (1949) and <u>Aguilar v. Standard Oil Co.</u>, 318 U.S. 724 (1943). Drunkenness is not always a disqualifying condition. <u>Garay v. Carnival Cruise Lines,</u>

---

in rem for plaintiff's injuries, and the Circuit Court of Appeals certified certain questions of law to the Supreme Court. The Supreme Court denied recovery.

   The Court distilled the substance of the questions before it into the sole issue of whether the vessel owner was liable in rem to one of the crew by reason of the improvident and negligent order of the master. The Court began its analysis by noting that for the district court's conclusion to be correct, the liability must be founded upon the general admiralty law or upon a local statute of the state in which the accident occurred. *Id.* at 168, 23 S.Ct. at 484. The Court then went on to examine the Continental codes and the American case law. The Court reasoned that while the Continental codes had restricted seamen to the traditional remedy of maintenance and cure, the American cases, perhaps stimulated by the English Merchants Shipping Act of 1876, had allowed recovery of an "indemnity" for unseaworthiness. However, these cases denied recovery for negligence in "navigation and management." Based on its review of these authorities, the Court opined:
   That the seaman is not allowed to recover an indemnity for the negligence of the master, or any member of the crew, but is entitled to maintenance and cure, whether the injuries were received by negligence or accident.

Inc., 904 F.2d 1527 (11th Cir. 1990), Sullivan v. United States, 179 F.2d 924 (2d Cir. 1949) and Gaham v. Texas Co., 218 F.Supp. 331 (E.D. Pa. 1963). Fighting is willful misconduct if the seaman is the aggressor. See Galledge v. United States, 337 F.Supp. 1108 (E.D. Pa. 1972) affirmed without opinion 474 F.2d 1340 (3rd Cir. 1973). Venereal disease is automatically disqualifying, but conduct which may lead to such consequences is not. Compare Koistinen v. American Export Lines, 194 Misc. 942, 83 N.Y.S. 2d 297 (1948) with Matthews v. Gulf and South American S.S. Co., 226 F.Supp. 555 (E.D. Pa. 1964) affd. per curiam 339 F.2d 702 (5th Cir. 1964).

The language in Warren, Farrell and Aguilar stresses that the duty to pay maintenance is almost absolute and that the right to maintenance should be interpreted broadly for the benefit of the seaman. The most recent expression of this view is found in Vella v. Ford Motor Co., 421 U.S. 1, 4 (1975) as follows:

> "Thus, the breadth and inclusiveness of the shipowner's duty assures its easy and ready administration for "[i]t has few exceptions or conditions to stir contentions, cause delays and invite litigations." Farrell v. United States, 336 U.S. 511, 516 (1949)."

DRBA has no defense to plaintiff's maintenance and cure claim. It accepted the records from Beebe Memorial Hospital as showing that plaintiff became disabled on August 9, 2002 and thereafter paid him for medical and then annual leave. It accepted medical slips to justify paying him for medical leave. DRBA's Insurance Manager admitted at deposition that DRBA has no evidence of willful misconduct. Whether or not the accident happened as plaintiff claims, it is undisputed that plaintiff became disabled while subject to the call of duty.

DRBA paid Kopacz his medical and annual leave until those benefits were exhausted.

Thereafter Kopacz had no income until he returned to work.

DRBA's payment of medical and annual leave benefits subjects it to exemplary damages because it demonstrates how intransigent and unreasonable DRBA was. These benefits do not diminish Kopacz' entitlement to full maintenance benefits. See Vaughan v. Atkinson, 369 U.S. 527 (1962). Ordinarily maintenance benefits are the cost of board and lodging, and Kopacz will present evidence that these totalled $55.20 per day. See Barnes v. Andover Co. L.P., 900 F.2d 630 (3rd Cir. 1990). However, since DRBA's policy is to pay full wages for 90 days and 60% of the base pay thereafter, that is the amount which Kopacz is entitled to recover. This is not a double recovery, and an award of full wages on The Jones Act/unseaworthiness claim does not diminish Kopacz' right to recover this also. Kopacz is also claiming the value of his medical and annual leave benefits since he was forced to use these, and a recovery of the value of these benefits is not a double recovery nor is it diminished by Kopacz' Jones Act/unseaworthiness claim.

B. Damages for failure to pay maintenance and cure

If a shipowner "unreasonably refuses to pay a marine employee's claim for maintenance and cure, the employee may recover consequential damages, including lost wages, pain and suffering and attorneys' fees and costs." See O'Connell v. Interocean Mgmt. Corp., 90 F.3d 82, 84 (3rd Cir. 1996).

**4. Anticipated Motion for Directed Verdict**

Plaintiff will move for a directed verdict because the uncontradicted evidence will show that plaintiff became disabled while in the service of the ship due to a cause other than willful misconduct, so he is entitled to maintenance and cure and it should have been paid. DRBA's

payment of sick leave and annual leave benefits when it knew that plaintiff was entitled to maintenance and cure also renders it liable for exemplary damages, including counsel fees, the amount of which should be set by the Court.

                                                                                                          _____
James J. Woods, Jr., Esquire
Sullivan and Woods
Suite 200
5305 Limestone Road
Wilmington, DE 19808
(302) 234-6855

E. Alfred Smith, Esquire
E. Alfred Smith & Associates
1333 Race Street, 2nd Floor
Philadelphia, PA 19107
(215) 569-8422

Attorneys for Plaintiff, Jan Kopacz