Westlaw.

Not Reported in A.2d                                                                 Page 1

Not Reported in A.2d, 2001 WL 1198946 (Del.Super.)

**(Cite as: 2001 WL 1198946 (Del.Super.))**

**H**
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.


Superior Court of Delaware.
Roger L. MULLINS and Marcella Mullins
v.
John R. KLASE,
**No. Civ.A. 99C-04-182FSS.**

Submitted June 29, 2001.
Decided Sept. 28, 2001.

RE: Plaintiff's Motion for Reargument-DENIED
Dear Counsel:

*1 On May 31, 2001, the court entered an order effectively precluding Plaintiff from introducing medical bills that should have been covered by his PIP insurance. The order speaks for itself. In summary, the court held that Plaintiff was in the class of persons eligible for PIP benefits, even though Plaintiff's PIP carrier is insolvent. Therefore, under *21 Del. C. § 2118(h)*, [FN1] the court denied Plaintiff permission to "board his specials."

> FN1. **21** *Del. C.* **§ 2118(h)**: Any person eligible for benefits ... is precluded from pleading or introducing into evidence in an action for damages against a tortfeasor those damages for which compensation is available ... without regard to any elective reductions in such coverage and whether or not such benefits are actually recoverable.

Through reargument, Plaintiff insists that he "has no coverage due to the insolvency of his carrier," therefore § 2118(h)'s preclusion does not apply. That is the precise point addressed in the May 31,

2001 order. Again, the order speaks for itself. Its gist was that according to the preclusion statute's express terms, it makes no difference whether Plaintiff actually receives PIP coverage from his carrier. By implication, that means it does not matter whether Plaintiff has insurance available, or whether, as in this case, the carrier cannot pay. What matters is whether Plaintiff was in the class legally obligated to obtain PIP coverage, which he was. The fact that Plaintiff's coverage may fail because his PIP carrier will not respond does not justify shifting Plaintiff's PIP coverage onto Defendant's carrier. To justify shifting PIP coverage onto the tortfeasor's carrier, Plaintiff must establish that he was not eligible for PIP coverage. The order further explains how the court reached its conclusion, despite the fact that Plaintiff may be blameless for his PIP predicament.

Like he did in his initial submission, on reargument Plaintiff declares, *ipsa dixit:* "In fact coverage is not available." To establish his point, Plaintiff rewrites the controlling statute, making his entitlement to PIP benefits turn on whether they are "available," rather than whether he was "eligible." Instead of presenting authority to support his position, Plaintiff merely distinguishes the case authority on which the order broadly relies, *Reed v. Hoffecker.* [FN2] While Plaintiff is correct that *Reed* is easily distinguishable on its facts, *Reed,* nevertheless, stands for the general proposition that:

> FN2. *Reed v. Hoffecker,* Del.Supr., 616 A.2d 835, 837 (1992), *citing with approval, Deel v. Rizak,* D. Del., 474 F.Supp. 45, 46 (1979).

It is settled that "persons eligible" under Section 2118[h] is "any person 'within a class of persons to whom the statutorily required [no-fault insurance] coverage extends'."
Furthermore, Plaintiff continues to ignore the plain language in **21** *Del. C.* **§ 2118(h)** that the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                             Page 2

Not Reported in A.2d, 2001 WL 1198946 (Del.Super.)

**(Cite as: 2001 WL 1198946 (Del.Super.))**

evidentiary preclusion applies "without regard to ... whether or not such benefits are actually recoverable." Plaintiff still has not offered a way around the statute's plain language.

The motion for reargument's second feature is Plaintiff's assumption that: "the health carrier has a lien on any settlement obtained by Mr. Mullins." That position also is unsupported by authority and Plaintiff does not mention or attempt to distinguish the authorities on which the order relies in reaching the opposite conclusion. [FN3]

> FN3. *Int'l. Underwriters, Inc. v. Blue Cross & Blue Shield of Del., Inc.,* Del.Supr., 449 A.2d 197, 200 (1982). *See also Gimmestad v. Gimmestad,* Minn. Ct.App., 451 N.W.2d 662 (1990); *McMichael v. Robertson,* Md. Ct. Spec.App., 549 A.2d 1157, 1161-1162 (1988); *Bullock v. Pariser,* Pa.Super., 457 A.2d 1287 (1983).

**\*2** Finally, Plaintiff's motion raises a new theory on reargument. Now he claims: "the expenses ... are boardable under the collateral source doctrine." He cites *Yarrington v. Thornburg,* [FN4] and *State Farm Mutual Automobile Insurance v. Nalbone.* [FN5] Just as *Reed* is distinguishable from this case on its facts, so are *Yarrington* and *Nalbone.* More importantly, the collateral source rule fundamentally concerns double recoveries by plaintiffs from collateral sources of their own making. As discussed below, the collateral source rule permits a double recovery from insurance paid for by a plaintiff. As also discussed below, *Yarrington* and *Nalbone* are not controlling in this situation.

> FN4. *Yarrington v. Thornberg,* Del.Supr., 205 A.2d 1 (1964).

> FN5. *State Farm Mutual Automobile Insurance v. Nalbone,* Del.Supr., 569 A.2d 71 (1989).

In *Yarrington,* the tortfeasor, Thornburg, had collateral insurance that paid the plaintiff, Yarrington, $5000. Thornburg wanted to use the $5,000 payment by his carrier to Yarrington as a set-off against any damage award to Yarrington. Specifically, Thornburg asked the trial court to instruct the jury to deduct the $5,000 from any award it might make to Yarrington. Thornburg reasoned that Yarrington should not be allowed to recover from Thornburg's insurance and then recover from Thornburg again at trial. The parties eventually agreed that the jury would not be told about the payment. After the jury returned a verdict for Yarrington, the trial court credited Thornburg with the payment by his carrier. On appeal, *Yarrington* held that because Yarrington's $5,000 pretrial recovery came from Thornburg's insurance, the $5,000 was not from a collateral source and the insurance payment was deductible from Yarrington's verdict. The courts would not allow Yarrington to recover twice from Thornburg.

In *Nalbone,* the injured plaintiff, Nalbone, tried to obtain a double recovery from both her PIP carrier, State Farm, and from her employer's "wage continuation plan." A divided Court decided by a narrow margin that the benefits provided by Nalbone's employer were attributable to Nalbone's employer, rather than Nalbone and, therefore, Nalbone could not recover those benefits from State Farm. *Nalbone* held: "If the insured has paid consideration for recovery from a collateral source, then recovery should be allowed." [FN6] The Court reasoned: "If a person pays both auto and health insurance premiums ... if an injury occurs he should be permitted, as a matter of contract law, to receive double recovery since that is what he has paid for." [FN7] As mentioned, State Farm did not have to pay its own insured, Nalbone, to the extent she had received benefits from her employer.

> FN6. Id. at 75.

> FN7. Id.

Thus, *Yarrington* and *Nalbone* do not address boarding damages, especially PIP claims. At the most, they may control a future decision as to whether Plaintiff can recover from his PIP carrier on top of the health insurance benefits he already

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                      Page 3

Not Reported in A.2d, 2001 WL 1198946 (Del.Super.)

**(Cite as: 2001 WL 1198946 (Del.Super.))**

has received. If it comes to that, the court assumes without deciding, that Plaintiff might recover from his PIP carrier if he proves that he, and not his employer, paid for the health insurance coverage that he received. Meanwhile, as discussed above, *Yarrington* and *Nalbone* do not help the court decide whether Plaintiff can make a PIP claim at trial. The court observes merely in passing, however, that the jury in *Yarrington* never learned about Thornburg's insurance.

**\*3** In this case, the critical question remains whether Plaintiff can ask the jury to award PIP benefits, which are excluded by law and not ordinarily recoverable at trial. The only rationale for Plaintiff's position remains his theoretical concern that if he wins a damage award, it might someday be reduced by a set-off in favor of the health insurance carrier. Like the court tried to explain in its original decision, that concern is legally unfounded and, moreover, it does not justify shifting the obligation to provide PIP coverage onto the tortfeasor, or his insurance carrier.

For the foregoing reasons, Plaintiff's Motion for Reargument is DENIED.

IT IS SO ORDERED.

Not Reported in A.2d, 2001 WL 1198946 (Del.Super.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.