# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| JAN KOPACZ and ESTATE OF CATHY KOPACZ, | : : : | |
| Plaintiffs, | : : | C.A. No. 04-911 GMS |
| v. | : : | |
| DELAWARE RIVER AND BAY AUTHORITY, and CRAIG SWETT, | : : : | |
| Defendants, | : | |

|  |  |  |
|---|---|---|
| JAN KOPACZ, | : : | |
| Plaintiff, | : : | C.A. No. 04-1281 GMS |
| v. | : : : | |
| DELAWARE RIVER AND BAY AUTHORITY, | : : | |
| Defendant. | : : | |

## BRIEF OF DEFENDANT, DELAWARE RIVER AND BAY AUTHORITY, IN SUPPORT OF ITS POST-TRIAL MOTIONS

OF COUNSEL:

Mary Elisa Reeves, Esquire
DONNA ADELSBERGER
 & ASSOCIATES, P.C.
6 Royal Avenue, P.O. Box 530
Glenside, PA 19038-0530
(215) 576-8690

ROSENTHAL, MONHAIT, GROSS
 & GODDESS, P.A.
Carmella P. Keener (DSBA No. 2810)
919 N. Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899-1070
(302) 656-4433
ckeener@rmgglaw.com
 Attorneys for Defendant
 Delaware River and Bay Authority

Dated: February 28, 2006

# TABLE OF CONTENTS

PAGE

I.    BACKGROUND ............................................................................. 1

II.   STATEMENT OF THE NATURE AND STAGE OF
      THE PROCEEDING ...................................................................... 2

III.  SUMMARY OF ARGUMENT ....................................................... 3

      1.    Re: DRBA's Motion for Judgment as a Matter of
            Law/Notwithstanding the Verdict........................................ 3

      2.    Re: DRBA's Alternative Motion for a New Trial ............... 3

IV.   ARGUMENT: DEFENDANT DRBA IS ENTITLED
      TO JUDGMENT AS A MATTER OF
      LAW/ NOTWITHSTANDING THE VERDICT .............................. 4

      A.    The Jury's Verdict with respect to the reasonableness
            of the DRBA's refusal to pay maintenance and cure was
            not supported by legally sufficient evidence ......................... 4

      B.    There is no proper evidence in the record to support
            the award of compensatory damages ..................................... 5

            1.    The DRBA provided Plaintiff with medical insurance,
                  which would have covered his medical bills ............. 5

            2.    Kopacz neither alleged nor suffered any legally
                  compensable injuries as a result of the DRBA's
                  failure to pay ........................................................... 6

            3.    The evidence presented in support of Plaintiff's claim for
                  stress and damage to his credit rating should have
                  been excluded ........................................................... 10

i

V.  ALTERNATIVELY, DEFENDANT DRBA IS ENTITLED
    TO A NEW TRIAL ............................................................    12

    A.  Evidence of FAA physical should have been excluded ........    12

    B.  Evidence of settlement discussions should have been
        excluded ............................................................    13

    C.  Evidence of liability insurance should not have been
        admitted ............................................................    13

    D.  Evidence of effect on credit rating should not have
        been admitted ....................................................    14

    E.  Prejudicial evidence designed to impermissibly attack
        Willey's character was heard by the jury..........................    14

    F.  Failure to permit more detailed voir dire of potential
        jurors ................................................................    14

    G.  Failure to instruct the jury that they need not award
        cure if it was provided in another form to the seaman........    15

    H.  Plaintiff should not have been allowed to argue that
        the DRBA invaded his privacy...............................    15

    I.  Such other and further reasons as may become
        apparent upon a review of the entire trial transcript..............    16


VI.  CONCLUSION ............................................................    17

# TABLE OF AUTHORITIES

Case Citations                                                                                          Page

*Affiliated Manuf. Inc. v. Aluminum Co. of America,*
56 F.3d 521 (3rd Cir. 1995) ................................................................... 14

*Ballance v. Energy Transport. Corp.,*
2002 A.M.C. 1982002 (S.D.N.Y. 2001) ........................................... 8

*Bavaro v. Grand Victoria Casino,*
2001 W.L. 289782 (N.D. Ill. 2001) ................................................... 8

*Carney v. United States,*
368 F. Supp. 2d 439 (D. Md. 2005) ................................................... 7

*Conway v. Chemical Leaman Tank Lines, Inc.,*
687 F.2d 108 (5th Cir. 1982), *reh'g denied,* 693 F.2d. 133 (5th Cir. 1982) ...... 10,12

*Cortes v. Baltimore Insular Lines,*
287 U.S. 367 (1932) ............................................................................ 8

*Cox v. Dravo Corp,*
517 F.2d 620 (3rd Cir. 1975) ............................................................. 2

*Deisler v. McCormack Aggregates Co.,*
54 F.3d 1074 (3rd Cir. 1995) ............................................................. 7

*DeSanto v. Rowan University,*
224 F. Supp 2d. 819 (D. N.J. 2002) ................................................... 11

*Ferris v. Pennsylvania Federation Brotherhood of Maintenance of Way Employees,*
153 F. Supp. 2d 736 (E.D. Pa. 2001) ................................................. 11

*Kasprik v. United States,*
87 F.3d 462 (11th Cir. 1996) ............................................................. 7

*Kiernan v. Van Schaik,*
347 F.2d 775 (3rd Cir. 1965) ............................................................. 15

*Miles v. Apex Marine Corp.,*
498 U.S. 19 (1990) .............................................................................. 8

*Moran Towing and Transportation Co. v. Lombas*,
58 F.3d 24  (2d Cir. 1995) ............................................................................    6

*Myers v. Pennypack Woods Home Ownership Assn.*,
559 F.2d 894 (3rd Cir. 1977),
*overruled on other grounds*, 777 F.2d. 113 (3rd Cir. 1985) .............................    10,12

*Neville v. American Barge Line Co.*,
182 F. Supp. 90 (3rd Cir. 1959) .........................................................................    7

*O'Connell v. Interocean Management Corp.*,
90 F.3d 82 (3rd Cir. 1996) ...............................................................................    2,6

*Perez-Perez v. Popular Leasing Rental, Inc.*,
993 F.2d 281 (1st Cir. 1993) .............................................................................    10,12

*Posttape Assoc. v. Eastman Kodak Co.*,
537 F.2d 751 (3rd Cir. 1976) .............................................................................    13

*Sanford v. Crittenden Memorial Hospital*,
141 F.3d 882 (8th Cir. 1998) .............................................................................    10,12

*Shaw v. Ohio River Co.*,
526 F.2d 193 (3rd Cir. 1975) .............................................................................    6,15

*Sims v. U.S. War Shipping Admin.*,
186 F.2d 972 (3rd Cir. 1951) .............................................................................    7

*Smith v. Delaware Bay Launch Service, Inc.*,
842 F. Supp. 770 (D. Del. 1994), *aff'd*, 54 F.3d 770 (3rd Cir. 1995) ..................    *passim*

*Sullivan v. Tropical Tuna, Inc.*,
963 F. Supp. 42 (D. Mass. 1997) .........................................................................    7

*Vaughan v. Atkinson*,
360 U.S. 527 (1962) ..........................................................................................    2

*Whatley v. United States*,
1970 A.M.C. 1566 (S.D.N.Y. 1970) ....................................................................    7

## OTHER AUTHORITIES

*Norris, The Law of Seamen*, 526:41 at 107 (4th Ed. 1985) .....................................    7,8

## I.    BACKGROUND

Plaintiff filed two suits with respect to an injury he allegedly suffered when he was struck by a vehicle on the deck of the ferry on August 9, 2002. The first was a suit filed against the DRBA for maintenance and cure, as well as for compensatory and punitive[1] damages arising out of the DRBA's unreasonable failure to pay the maintenance and cure. (Ex. 1). DRBA answered this complaint, and defended on the basis that their investigation of Kopacz' claim revealed overwhelming evidence that the accident did not occur at all and was a complete fabrication.

One year later, plaintiff filed a second suit against the driver of the vehicle, Craig Swett, and the DRBA. (Ex. 2). This action sought damages against Swett and DRBA for injuries sustained as a result of the defendants' negligence, as well as due to the unseaworthiness of the DRBA's ferry. As both suits arose out of the same alleged car accident on August 9, 2002, the actions were consolidated and heard by a jury on February 6 through 13, 2006.

Following a five-day trial, the jury returned a verdict in which they found that the plaintiff was not struck and injured by the Swett vehicle on the day in question. Nonetheless, they found that plaintiff was injured while subject to the call of duty, and awarded maintenance, cure and the value of sick and annual leave that plaintiff had used while he was out of work. (Ex. 3). Although the DRBA disagrees with this

---

[1]  The punitive damages claim was dismissed by the Court on summary judgment. (Ex. 5).

verdict[2], it nonetheless paid that portion of the judgment on February 27, 2006, without prejudice to its right to contest the remainder of the verdict. (Ex. 4).

The jury also found that the DRBA's refusal to pay maintenance and cure was unreasonable and without reasonable justification, and awarded compensatory damages in the amount of $47,500. (Ex. 3). It is this portion of the verdict which DRBA seeks to set aside.

## II.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

This case was tried to a jury from February 6-10, 2006. The jury returned its verdict on February 13, 2006, finding in favor of Plaintiff for maintenance and cure and in favor of the DRBA on the claims of negligence and unseaworthiness. The verdict was entered by the Court on February 15, 2006 to reflect the jury's verdict on maintenance and cure. The Court amended the judgment on February 22, 2006 to reflect the jury's verdict in favor of the DRBA on the counts of negligence and unseaworthiness. This is Defendant DRBA's opening brief in support of its post-trial Motions for judgment as a matter of law/notwithstanding the verdict, or in the alternative, for a new trial.

---

[2] Maintenance and cure damages were created by and continue to be governed by general maritime law. *O'Connell v. Interocean Management Corp.*, 90 F.3d 82, 84 (3rd Cir. 1996). Maintenance is the equivalent of the food and lodging to which a seaman is entitled while he is at sea. *Cox v. Dravo Corp.*, 517 F.2d 620, 623 (3rd Cir. 1975). Similarly, cure is the medical treatment to which a seaman becomes entitled when injured while in the service of the ship. *Id.* The remedy was initially developed centuries ago for the benefit of so-called "blue water" seamen, who spent months or even years onboard their ships, and was designed to prevent a callous shipowner from abandoning a sick or injured seaman in a foreign port with no means of obtaining medical treatment or transportation home. *See, generally, Vaughan v. Atkinson*, 360 U.S. 527, 531 (1962). In this case, Kopacz was a "commuter seaman" who was provided neither food nor lodging onboard the ship. Moreover, there was no evidence to suggest that he suffered any injury in the service of the ship other than his claim that he was struck by the Swett vehicle.

2

### III.    SUMMARY OF ARGUMENT

#### 1.    Re: DRBA's Motion for Judgment as a Matter of Law/Notwithstanding the Verdict

DRBA moves for judgment as a matter of law/notwithstanding the verdict on the following bases: 1) The jury's verdict with respect to the reasonableness of the DRBA's refusal to pay maintenance and cure was not supported by legally sufficient evidence; 2) There is no proper evidence in the record to support the award of compensatory damages; 3) The DRBA provided Plaintiff with medical insurance, which would have covered his medical bills; 4) Kopacz neither alleged nor suffered any legally compensable injuries as a result of the DRBA's failure to pay and 5) The evidence presented in support of Plaintiff's stress and damage to his credit rating should have been excluded.

#### 2.    Re: DRBA's Alternative Motion for a New Trial

DRBA moves for a new trial on the following bases: 1) Evidence of FAA physical should have been excluded; 2) Evidence of settlement discussions should have been excluded; 3) Evidence of liability insurance should not have been admitted; 4) Evidence of effect on credit rating should not have been admitted; 5) Prejudicial evidence designed to impermissibly attack Willey's character was heard by the jury; 6) Failure to permit more detailed voir dire of potential jurors; 7) Failure to instruct the jury that they need not award cure if it was provided in another form to the seaman; 8) Plaintiff should not have been allowed to argue that the DRBA invaded his privacy; and 9) Such other and further reasons as may become apparent upon a review of the entire trial transcript.

3

## IV.    ARGUMENT: DEFENDANT DRBA IS ENTITLED TO JUDGMENT AS A MATTER OF LAW/ NOTWITHSTANDING THE VERDICT

### A.    The Jury's Verdict with respect to the reasonableness of the DRBA's refusal to pay maintenance and cure was not supported by legally sufficient evidence

Plaintiff's demands for maintenance and cure were based solely on the allegation that he was struck and injured by an automobile while on the car deck of the ferry. Kopacz neither claimed nor testified that he suffered any other injury while working on the ferry that day. Throughout this litigation, the DRBA has maintained that the accident did not occur[3], and therefore plaintiff's claim was fraudulent.

After hearing all of the evidence, the jury agreed that plaintiff was not struck and injured by the Swett vehicle on August 9, 2002. Since this was the basis for DRBA's refusal to pay, there was no legally sufficient evidence for the jury to find that DRBA's decision was in any way unreasonable.

The Court may grant judgment as a matter of law when, without weighing the credibility of the evidence, there can be only one proper conclusion as to the correct judgment on an issue. *Smith v. Delaware Bay Launch Service, Inc.*, 842 F. Supp. 770, 775 (D. Del. 1994), *aff'd*, 54 F.3d 770 (3rd Cir. 1995). In a remarkably similar case, the Third Circuit affirmed the District Court's post-verdict entry of judgment as a matter of law on the issue of the award of compensatory damages for the shipowner's failure to pay maintenance and cure. *Id.* In so doing the Court confirmed that the moving party is not required to show that there is literally **no** evidence to support the verdict, but rather that there was insufficient evidence in the record to

---

[3] This position was supported by the police report and the testimony of four eyewitnesses who worked for the ferry, as well as those in the Swett vehicle, and later by passenger Marc Greenstein.

4

support the verdict. *Id.* at 774-774. In this case, no reasonable jury could find that the DRBA's decision regarding maintenance and cure under these circumstances was unjustified.

The jury's verdict in finding DRBA's conduct unreasonable was plain error, and therefore the verdict for compensatory damages cannot stand. Since DRBA's justification for not paying maintenance and cure was identical to the jury's finding that plaintiff was not struck and injured by the Swett vehicle, the Court must enter judgment as a matter of law in favor of DRBA on this issue.

**B.    There is no proper evidence in the record to support the award of compensatory damages**

Over DRBA's objection, plaintiff was permitted to introduce evidence that he suffered from stress and that his credit rating was ruined because his medical bills were not paid by the DRBA. There are several problems with this theory, the most significant being that these types of damages are not available to a seaman as compensation from his employer for failure to pay maintenance and cure.

**1.    The DRBA provided Plaintiff with medical insurance, which would have covered his medical bills**

Compensatory damages should not have been awarded in this case, because there was no evidence presented that Kopacz did not receive adequate medical care and lodging for his injuries. Moreover, the DRBA provided him with full medical coverage as a benefit of his employment. As the Court will recall, a representative of Blue Cross Blue Shield testified that Kopacz was covered by its medical insurance policy, and in the event a claim is disputed by the employer as work related, Blue Cross will pay for all medical treatment so that its insured is covered. Although plaintiff denied knowledge of this fact, he ignored instructions from the

5

DRBA to submit his bills through his medical insurance. This conduct was contrary to the way in which he handled his dental bills– the Court will recall that Kopacz testified that when the automobile insurance carrier denied coverage of his dental bills, he simply submitted them to his dental insurance for coverage.

A vessel owner has no obligation to provide maintenance and cure which is furnished by others at no expense to the seaman.[4] *Shaw v. Ohio River Co.*, 526 F.2d 193, 201 (3rd Cir. 1975); *Moran Towing and Transportation Co. v. Lombas*, 58 F.3d at 27. Therefore, when medical insurance coverage is available to cover the costs of his care, the vessel owner in not obligated to provide separate "cure." *Shaw*, 526 F.2d at 201. In any event, there is no evidence in the record that plaintiff was ever denied medical care at any time following the events of August 9, 2002.

## 2. Kopacz neither alleged nor suffered any legally compensable injuries as a result of the DRBA's failure to pay

Maritime law provides that if an employer wrongfully withholds maintenance and cure, the seaman *may* recover consequential losses such as lost wages, pain and suffering, and, potentially, attorneys' fees and costs. *O'Connell v. Interocean Management Corp.*, 90 F.3d 82, 84 (3rd Cir. 1996). In this case, the jury has already awarded Plaintiff full wages as maintenance, as well as the value of his sick and annual leave,[5] and therefore Kopacz did not suffer any lost wages.

---

[4] It is anticipated that plaintiff will argue that because he was required to pay 8% of his medical insurance premium, this rule does not apply. Clearly, the fairer method would be to require the shipowner to reimburse the seaman for any such co-pay in the event of an on the job injury. *See Moran Towing and Transportation Co. v. Lombas*, 58 F.3d 24, 27 (2d Cir. 1995) [doctrine of cure provides only that shipowner need only cover out of pocket costs for medical care provided by others]. A contrary holding will discourage shipowners from providing medical benefits to its marine employees.

[5] Although the DRBA believes that this provided a double recovery, it chose not to contest that portion of the judgment.

6

The only evidentiary basis for the compensatory award was the stress allegedly suffered by plaintiff when his medical providers sought payment, the damage to his credit rating which allegedly resulted, and the unsupported claim that a home equity loan taken by Kopacz carried a higher interest rate because of the collection efforts of these providers. It is DRBA's position that the law does not provide for recovery for any of these types of damages, and also that the court erred in permitting this evidence in the first place. Moreover, all of the collection efforts and related stress came long after Kopacz had been found fit for duty and returned to work on the ferry.

The only damages recoverable for an unreasonable failure to pay are those which compensate a seaman "to the extent that the delay in receipt of his maintenance and cure exacerbated [plaintiff's] injury or extended his pain and suffering." *Carney v. United States*, 368 F. Supp. 2d 439, 450 (D. Md. 2005) (*citing Kasprik v. United States*, 87 F.3d 462, 466 n. 3 (11th Cir. 1996); *Deisler v. McCormack Aggregates Co.*, 54 F.3d 1074, 1083 (3rd Cir. 1995); *Sims v. U.S. War Shipping Admin.*, 186 F.2d 972, 974 (3rd Cir. 1951)). *See also Neville v. American Barge Line Co.*, 182 F. Supp. 90 (3rd Cir. 1959) (recognizing that a shipowner would be liable for consequential damages for failure to pay maintenance and cure where this led to the seaman's financial inability to obtain medical treatment causing a prolonged illness); *Sullivan v. Tropical Tuna, Inc.*, 963 F. Supp. 42, 46 (D. Mass. 1997)(allowing recovery for prolonged physical pain and suffering caused by delay in providing medical treatment)(collecting cases); *Whatley v. United States*, 1970 A.M.C. 1566, 1568 (S.D.N.Y. 1970)(denying damages for failure to pay maintenance and cure as there was no evidence that plaintiff's condition was aggravated or prolonged by the failure to pay maintenance and cure); *Norris, The Law of Seamen*, 526:41 at 107 (4th Ed. 1985).

7

The District Court's opinion in *Smith v. Delaware Bay Launch Service, Inc.* is directly on point. 842 F. Supp. 770. In that case, the jury found in favor of the shipowner on the negligence and unseaworthiness claims, but awarded compensatory damages to the plaintiff for the shipowner's unreasonable failure to pay maintenance and cure. *Id.* The defendant filed a post-trial motion seeking judgment as a matter of law, because there was no evidence in the record to support a finding that the seaman's injuries were aggravated as a result of the failure to pay. *Id.* at 775. Like Kopacz, plaintiff had received medical treatment despite the shipowner's failure to pay for it. Recognizing that recovery is only permitted when the failure to pay aggravates the seaman's condition, the Court overturned the jury's verdict of compensatory damages because the seaman procured his own maintenance and cure and there was no evidence of inadequate treatment or a worsening of his condition. 842 F. Supp. at 776.

In this case, Kopacz was never denied medical treatment for any physical problems following this particular incident. There was no testimony that any of his treatment was delayed, which explains why no evidence of exacerbation or extension of his pain and suffering was introduced. Accordingly, there can be no award of compensatory damages, as no evidence exists to support these types of damages.

Plaintiff's entire claim for compensatory damages revolved around his credit standing. In a similar case, a seaman was denied the right to seek compensation for emotional distress and suffering that allegedly resulted from anxiety about how to pay for mounting medical costs and receipt of health care provider collection letters. *Bavaro v. Grand Victoria Casino*, 2001 WL 289782 (N.D. Ill. 2001). The Court held that Bavaro's recovery under the Jones Act was limited to damages caused by aggravation or extension of a physical injury because the Jones Act does not allow damages for emotional distress or similar injuries unless they are related to a physical

8

injury or threat of physical harm.[6] The claim for worrying about finances was therefore rejected as a matter of law.

Like Kopacz, Bavaro received medical treatment for her injuries, and her only distress was a result of worrying about the financial aspect of who would pay for portions of the care she received. Damages for emotional injuries, such as Bavaro's, that are unrelated to a physical condition or occurrence are not available under the Jones Act. When a seaman is able to secure medical treatment, his damages are limited to payment of medical expenses. *Norris, The Law of Seamen* § 26:41 at 107 (4th Ed. 1985) (*quoting Cortes v. Baltimore Insular Lines*, 287 U.S. 367, 372 (1932)); *See also Smith v. Delaware Bay Launch Service*, 842 F. Supp. at 766.

Similarly, no evidence was presented at trial that Kopacz was physically harmed or endured any physical pain and suffering as a result of the failure to pay. Because Kopacz would have been unable to recover for alleged emotional distress under the Jones Act, such a claim is not cognizable under general maritime law. Under well-recognized uniformity principles in maritime law, a seaman is not entitled to a more expansive scheme of recovery under general maritime law then would be given under a controlling legislatively created cause of action, such as the Jones Act. *Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990). It was under this very principle that Kopacz' claim of punitive damages was previously dismissed by this Court. (Memorandum and Opinion of September 26, 2005, attached hereto as Exhibit 5, D.I. 30, No. 04-1281).

This reasoning was likewise adopted by this Court in *Smith*, which held that compensatory damages for an unreasonable failure to pay maintenance and cure were limited to

---

[6] For a detailed explanation of the limitations on seeking recovery for emotional distress in a Jones Act case, see *Ballance v. Energy Transport. Corp.*, 2002 A.M.C. 1982002 (S.D.N.Y. 2001).

9

traditional tort damages. 842 F. Supp. at 775. As previously discussed, maritime tort damages under the Jones Act simply do not encompass the type of emotional and financial damages sought by the plaintiff in this case.

In the absence of proof that the failure to pay maintenance and cure prolonged or aggravated the injury, there can be no award of compensatory damages. *Smith*, 842 F. Supp. at 775-776. "Thus, as a matter of law, there can be no injury or aggravation from failure to pay maintenance and cure if the plaintiff was able to receive adequate food, lodging and medical treatment." *Id.* at 776.

## 3. The evidence presented in support of Plaintiff's claim for stress and damage to his credit rating should have been excluded

In addition to the fact that such damages are not recoverable as a matter of law, DRBA also submits that any evidence of this type of damage should have been excluded for several reasons.

First, plaintiff never revealed these damages in either his pretrial disclosures required by the Federal Rules, or in response to discovery propounded by the DRBA. (See Plaintiff's Disclosures, attached as Exhibit 6; Plaintiff's Answer to Interrogatory 9, attached as Exhibits 7 and 8). Accordingly, the presentation of this evidence for the first time at trial constituted unfair surprise to DRBA, and therefore should have been excluded. *See, generally, Sanford v. Crittenden Memorial Hospital*, 141 F.3d 882 (8th Cir. 1998); *Perez-Perez v. Popular Leasing Rental, Inc.*, 993 F.2d 281 (1st Cir. 1993); *Conway v. Chemical Leaman Tank Lines, Inc.*, 687 F.2d 108 , 112 (5th Cir. 1982), *reh'g denied*, 693 F.2d. 133 (5th Cir. 1982); *Myers v. Pennypack Woods Home Ownership Assn.*, 559 F.2d 894, 905 (3rd Cir. 1977), *overruled on other grounds*, 777 F. 2d. 113 (3rd Cir. 1985).

10

Secondly, plaintiff testified about his credit rating, and presented no expert testimony to support the allegation that his credit was affected at all by unpaid medical bills. Instead, he testified that he was told by a loan officer that he was not entitled to a more favorable interest rate because of the unpaid medicals, and that his prior unrelated bankruptcy had no effect on his credit rating. This testimony was clearly self-serving hearsay, and contained an opinion on credit worthiness which the plaintiff was clearly unqualified to give.

The only evidence that plaintiff was harassed by medical creditors was his unsubstantiated testimony that such collection efforts were made. Since defendant heard this allegation for the first time at trial, it had no opportunity to substantiate or rebut this claim, which was unduly prejudicial. The DRBA was permitted to question plaintiff about his credit report, which the plaintiff explained away by giving self-serving hearsay testimony. Moreover, evidence from Blue Cross that all medical bills would have been paid through his insurance was un-rebutted, and for this and the reasons previously stated, the entire "bad credit" theory should be rejected, and in any event is not a recoverable category of damage for failure to pay maintenance and cure.

Finally, plaintiff should not have been permitted to testify about any stress that he suffered, because such testimony presented an unfair surprise and therefore could not be substantiated or effectively challenged. Moreover, there was no medical evidence of this stress or its cause, which should be required to support any claim of psychological injury. *See, generally*, *Ferris v. Pennsylvania Federation Brotherhood of Maintenance of Way Employees*, 153 F. Supp. 2d 736, 746 (E.D. Pa. 2001); *See also*, *DeSanto v. Rowan University*, 224 F. Supp 2d. 819, 830 (D. N.J. 2002) (Precluding testimony of plaintiff's medical condition without expert testimony linking the condition to the defendant's conduct.).

11

The Court should therefore enter judgment as a matter of law in favor of defendant on the compensatory damage award because there was no legally sufficient basis for the jury to find that the DRBA's conduct was unreasonable, and moreover, there was no evidence that plaintiff suffered any compensable damages for such failure to pay maintenance and cure, reasonable or otherwise.

## V.    ARGUMENT:  ALTERNATIVELY, DEFENDANT DRBA IS ENTITLED TO A NEW TRIAL

In the alternative, the DRBA moves for a new trial on the issue of the reasonableness of its decision not to pay maintenance and cure, and in support therefore adopts all of the foregoing arguments.  In addition, the DRBA seeks a new trial on the following additional grounds:

### A.    Evidence of FAA physical should have been excluded

Over DRBA's objection, Kopacz was permitted to testify that he submitted to an FAA physical earlier in 2002, and that his pilot's license would not have been renewed if he had a "bad back."  This testimony was unfairly prejudicial because this information was not disclosed during pretrial discovery, and thus DRBA was unable to verify this claim by obtaining the relevant records.[7]  Accordingly, the presentation of this evidence for the first time at trial constituted unfair surprise to DRBA, and therefore should have been excluded.  *See, generally,* *Sanford v. Crittenden Memorial Hospital, supra*; *Perez-Perez v. Popular Leasing Rental, Inc.,* *supra*; *Conway v. Chemical Leaman Tank Lines, Inc., supra*; *Myers v. Pennypack Woods Home Ownership Assn., supra*, 559 F.2d at 905.

---

[7] Moreover, research undertaken since the trial tends to refute the allegation that a pilot cannot fly if he suffers from degenerative disc disease and back pain.

12

**B.      Evidence of settlement discussions should have been excluded**

Although the Court sustained DRBA's objection to the admissibility of certain letters

between plaintiff's counsel and representatives of the DRBA and its underwriters, the Court

allowed plaintiff to question Bonnie Miller about the content of those letters, and the fact that

"plaintiff would not have filed suit if maintenance and cure had been paid." The fact that

plaintiff threatened to sue if a certain settlement demand was not met is clearly not admissible

before a jury on the issue of a defendant's liability for that payment. Moreover, plaintiff's

closing argument that "he would not have filed suit if the DRBA had simply paid his medical

bills and wages" is disingenuous, as plaintiff filed a separate suit long after his initial demand

under the Jones Act. There was also no guarantee that, if paid, the claim for compensatory

damages would have been withdrawn. Public policy encourages the parties to explore settlement

both before and after litigation, and therefore evidence of offers to settle are not admissible at

trial. *See Affiliated Manuf. Inc. v. Aluminum Co. of America*, 56 F.3d 521 (3rd Cir. 1995)

(discussing FRE 408).

**C.      Evidence of liability insurance should not have been admitted**

Despite contrary rulings by the Court, plaintiff consistently elicited testimony about the

role of the DRBA's insurance carrier, the U.K. P&I Club. FRE 411 does not permit such

evidence for fear that "knowledge that a party is insured may also affect a verdict if the jury

knows that some of the loss has been paid by insurance or that it would satisfy a judgment

against a defendant." *Posttape Assoc. v. Eastman Kodak Co.*, 537 F.2d 751 (3rd Cir. 1976).

13

**D.    Evidence of effect on credit rating should not have been admitted**

Plaintiff should not have been permitted to testify that his credit rating was adversely affected by the fact that certain medical providers initiated collection efforts. As previously stated, this testimony was unfairly prejudicial as this theory of liability had not been previously disclosed. Moreover, plaintiff was permitted to present self-serving hearsay testimony that his banker told him that the interest rate on a loan was higher because of the unpaid medical bills, and had not been effected by the earlier bankruptcy. This testimony was suspicious as plaintiff was unable to identify the loan in question on his credit report. In any event, the DRBA was denied the opportunity to take discovery on this issue. More importantly, plaintiff was rendering an opinion on a credit rating that was never revealed, and which would require expert testimony.

**E.    Prejudicial evidence designed to impermissibly attack Willey's character was heard by the jury**

Plaintiff's counsel asked eyewitness Mike Willey about an alleged drinking problem and fact that he was the subject of a sexual harassment suit. Although DRBA's objection was sustained and a cautionary instruction given, these questions were so inflammatory that they may have unfairly prejudiced the jury against this witness, and by association, against the DRBA.

**F.    Failure to permit more detailed voir dire of potential jurors**

The DRBA sought to have the jury questioned about various individual experiences which might have revealed biases in favor of plaintiff or against the defendants. For example, the DRBA sought to voir dire the jury on their own history of back or work related injuries, as well as their knowledge of the marine industry and medical profession. The Third Circuit has held that a trial court abused its discretion in this area and ordered a new trial when counsel was denied the opportunity to conduct a proper analysis for determining challenges for cause and

14

peremptory challenges. *Kiernan v. Van Schaik*, 347 F.2d 775 (3rd Cir. 1965).  "The traditional

right of peremptory challenge recognizes that matters of bias or prejudice may be sensed or

suspected without possibility of proof, and therefore permits counsel to exercise his inarticulate,

instinctive judgement, which he need not, if he could, attempt to justify....It is not enough,

therefore, to grant the rights of peremptory challenge and challenge for cause and then limit the

factual basis for their use to the visible appearance of the jurors and the scant information on the

jury list of their residence and occupation."  *Id.* at  779, 781.

> G.    **Failure to instruct the jury that they need not award cure if it was provided in another form to the seaman**

The Court deleted the following language, set forth below in bold,  from the maintenance

and cure instruction:

> The "cure" to which a seaman may be entitled includes the cost of
> medical attention, including the services of physicians and nurses
> as well as the cost of hospitalization, medicines and medical
> apparatus.  **To the extent that treatment was eligible for
> coverage by medical insurance provided by the DRBA, you
> may not award cure to plaintiff.**

The Court therefore declined to instruct the jury with respect to the law of this Circuit,

which resulted in extreme prejudice to the DRBA and which likely resulted in the verdict for

compensatory damages. *See Shaw v. Ohio River Co.*, 526 F.2d at 201.

> H.    **Plaintiff should not have been allowed to argue that the DRBA invaded his privacy**

Plaintiff's counsel was permitted to question the DRBA's representatives about an

alleged invasion of privacy when Ms. Miller sent the police and incident reports to State Farm,

Swett's insurance carrier.  Thus, this argument was improperly raised in an effort to prejudice the

jury against the DRBA.

15

**I.** **Such other and further reasons as may become apparent upon a review of the entire trial transcript**

For all of the foregoing reasons, as well as those which may become apparent upon a review of the full trial transcript, the DRBA respectfully requests a new trial on the reasonableness of DRBA's failure to pay maintenance and cure in the event that judgment as a matter of law is not granted.

## VI.    CONCLUSION

The Court should enter judgment as a matter of law, notwithstanding the verdict, because

1) there was not sufficient evidence to support the finding that the DRBA's failure to pay

maintenance and cure was unreasonable;  2) plaintiff did not present any evidence that he did not

receive medical treatment or that the failure to pay resulted in any delay of treatment which

aggravated his physical condition; 3) the evidence that plaintiff suffered stress or an adverse

affect on his credit rating as a result of any failure to pay should not have been admitted in the

first place.

In the alternative, the DRBA seeks a new trial for the various grounds stated above.

Dated: February 28, 2006

OF COUNSEL:

Mary Elisa Reeves, Esquire
DONNA ADELSBERGER
 & ASSOCIATES, P.C.
6 Royal Avenue, P.O. Box 530
Glenside, PA 19038-0530
(215) 576-8690

ROSENTHAL, MONHAIT, GROSS
 & GODDESS, P.A


By:/s/ Carmella P. Keener
Carmella P. Keener (DSBA No. 2810)
919 N. Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899-1070
(302) 656-4433
ckeener@rmgglaw.com
          Attorneys for Defendant
          Delaware River and Bay Authority

17

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2006, I electronically filed with the Clerk of Court BRIEF OF DEFENDANT, DELAWARE RIVER AND BAY AUTHORITY, IN SUPPORT OF ITS POST-TRIAL MOTIONS using CM/ECF which will send notification of such filing to the following:

Donald M. Ransom, Esquire
Casarino, Christman & Shalk, P.A.
800 N. King Street, Suite 200
P.O. Box 1276
Wilmington, DE 19899

James J. Woods, Esquire
Law Office of James J. Woods, Jr., P.A.
P.O. Box 4635
Greenville, DE 19807

James S. Green, Esquire
Seitz, Van Ogtrop & Green, P.A.
222 Delaware Avenue, Suite 1500
P.O. Box 68
Wilmington, DE 19899

/s/ Carmella P. Keener (DSBA No. 2810)
Rosenthal, Monhait, Gross & Goddess, P.A.
919 N. Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899-1070
(302) 656-4433
ckeener@rmgglaw.com

cc:    E. Alfred Smith, Esquire (via electronic mail)