IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAN KOPACZ and JAN KOPACZ, Administrator of the Estate of Cathy Kopacz, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| DELAWARE RIVER AND BAY AUTHORITY and CRAIG SWETT | ) ) ) ) |
| Defendants. | ) ) |

C.A. No. 04-911 GMS

Jury Trial Demanded

| | |
|---|---|
| JAN KOPACZ | ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| DELAWARE RIVER AND BAY AUTHORITY | ) ) ) ) |
| Defendant. | ) |

C.A. No. 04-1281 GMS

**Petition for Allowance of Counsel
Fees and Costs**

Plaintiff, Jan Kopacz, by his counsel, respectfully petitions the Court to award counsel fees and expenses in his favor in accordance with the jury's verdict and in support thereof avers as follows:

**Basis for award**

1. This Court excluded plaintiff's exhibits nos. 56 through 59, which were letters exchanged between plaintiff's counsel and defendant and its marine claims adjuster prior to the

institution of suit, and these letters were an effort by counsel to have defendant pay the maintenance and cure without the need for suit being started. Defendant's own claims manager, Bonnie Miller, so admitted during her testimony.

2. Counsel made it abundantly clear that the onset of disability, irrespective of the cause, triggered the obligation to pay maintenance by stating the following in the very first letter to Ms. Miller at DRBA dated August 19, 2003:

> Mr. Kopacz' disability had its onset while he was subject to the call of one of your ferries, so he is indisputably entitled to maintenance. You never paid this to him, and when he inquired recently, you told him you were holding off on paying him for some unspecified reason.

3. This was repeated in a subsequent letter to DRBA's adjuster, John P. Schaffer, Esquire, of Lamorte, Burns & Co., Inc., dated September 23, 2003. In the letters to Ms. Miller and Mr. Schaffer, counsel asked that maintenance and cure be paid promptly, otherwise suit would be brought for "maintenance and cure, prejudgment interest, compensatory and punitive damages for failure to pay maintenance and cure, wages, attorney's fees and costs and compensatory damages for any worsening of Mr. Kopacz' condition."

4. No maintenance and cure was paid, and the jury found DRBA's refusal to pay "unreasonable and without reasonable justification." DRBA finally paid the maintenance and cure and sick and annual leave benefits by a check totaling $28,839.00 which was received by counsel on February 27, 2006.

**Time Records**

5. Counsel has kept no time records, so he has recreated everything from reviewing the file. The times assigned to the various activities are conservatively estimated, and no doubt

many activities have been lost. For example, all telephone discussions with DRBA's counsel, Ms. Reeves, were lost because counsel did not keep track of them except when they were confirmed by correspondence. The telephone discussions with Swett's counsel were recreated because Swett's counsel confirmed each by letter, with one exception.

6. The bulk of the effort was spent on the New Jersey lawsuit, which was filed first and which concerned only maintenance and cure and issues related to their non-payment.

## Hourly Rates

7. A rate of $350 per hour was suggested by local counsel, James S. Green. This is his rate. See Exhibit 1. For comparison purposes, the rate of earlier local counsel, James Woods, was $260 when he was with Connelly, Bove and this was reduced to $225 when he was on his own and his overhead was lower.

8. Counsel was admitted to practice in April 1964. He was then employed by Dechert Price and Rhoads. Counsel graduated from the University of Pennsylvania Law School in 1961 and served in the U.S. Army from October 2, 1961 to October 1, 1963. He began at the Dechert office on October 15, 1963.

9. On December 1, 1965 counsel was employed by Krusen Evans and Byrne and remained there until November 30, 1995. During his 30 years at the Krusen firm counsel defended maritime personal injury cases and tried many of them. Counsel was a frequent speaker at annual meetings of The Maritime Law Association of the United States and served on its Executive Committee from 1983 - 1986. Counsel taught Admiralty Law as an Adjunct Professor of Law at the Widener University School of Law from 1983 - 1988.

10. The New Jersey lawsuit was started first and involved only maintenance and cure and the damages associated with their non-payment. The Wilmington lawsuit was a Jones Act/unseaworthiness claim against DRBA and a general maritime law claim against Craig Swett. The cases were consolidated and tried to a single jury.

### Time Expended - Generally

11. Counsel's time largely mirrored that of defense counsel, but it was much greater because defense counsel has a Paralegal subpoena virtually every record that may possibly be relevant, and copies of these are routinely supplied to plaintiff's counsel. These must all be reviewed in detail when they arrive and again during preparation of the pre-trial order and during trial preparation. Most also have to be reviewed with the client as part of the trial preparation.

12. All of plaintiff's medical records were subpoenaed, as far back as counsel could possibly go and also forward to include the records following plaintiff's December 24, 2004 accident. The subpoenaed records reflected treatment for virtually every ailment that plaintiff had for the past 20 years or so, and these included eye problems, foot problems, high blood pressure and a host of other things as well as results of various physical examinations.

13. The records also included treatment for prior back conditions, and these included reference to a fall off a horse of 25 years or so ago, a tractor incident of 10 years or so ago, an automobile accident in 1999, a tug incident of 2000, a flight incident of many years ago and an ankle sprain which occurred on June 30, 2002 and resulted in 3 days' disability.

14. Defense counsel's medical expert, Dr. Malumed, estimated the volume of medical records made available to him to be 500-600 pages.

15. As of the time of trial plaintiff's answers to defendant's interrogatories showed that the claim was for a cervical and lumbar sprain and strain which disabled plaintiff for 3 ½ months with occasional pain thereafter referable to the low back. Nevertheless, all of the records of the prior back and neck conditions and treatment therefor were part of the exhibits of both defense counsel and constituted a large part of the 3 ½ hours or so of their cross-examination of plaintiff.

16. Copies of DRBA's exhibits were made available to the Court prior to the Pre-Trial Conference and were returned to defense counsel by the Court at the Pre-Trial Conference. The Court no doubt recalls the volume of these records. The Pre-Trial Order contains plaintiff's counsel's comments upon his review of all of these records, and they show that much extraneous material was included and in some cases two and three copies of the same records were included.

17. All of the subpoenaed records had to be reviewed carefully to prepare plaintiff as well as Drs. Mehdi and Lopez to testify as well as to prepare to cross-examine Dr. Malumed. The time spent was considerable, yet in retrospect counsel does not understand why it was necessary in light of the limited exposure in damages and the medical defense.

18. The medical defense presented through Dr. Malumed completely supported the jury's verdict and was precisely what plaintiff's counsel described in the initial letter to Bonnie Miller on August 19, 2003, in the letter to John Schaffer of September 23, 2003 and in the Trial Memorandum filed with this Court on December 19, 2005. That was that the disability had its onset (irrespective of the cause) while plaintiff was subject to the call of duty so he was indisputably entitled to maintenance and cure. DRBA never disputed plaintiff's disability from and after he was treated at Beebe Medical Center on August 9, 2002 and DRBA paid plaintiff his sick leave until it ran out, so DRBA obviously considered him disabled. In fact, his disability has

never been contested.

19. Dr. Malumed's sole opinion, rendered in response to defense counsel, was as follows:

> Well, first of all, Mr. Kopacz clearly had a long, extensive history of back problems, degenerative back problems, arthritic back problems that he elected not to tell me about. These problems are clearly evident in 1997, 1998, 1999, 2000. Had a car accident, a separate work-related accident in 2000, another work-related accident in 2002 and has a consistent history of having low back complaints. From this incident, if it occurred, he may have sustained a strain or sprain to the back, a fairly simple thing that resolves within a week or two or three. The continuing complaints he has in his back, the subjective complaints are due to long-standing degenerative arthritic conditions that he's had for many years before, even from the medical records, having back complaints dating back to 1980. Certainly the complaints he has and the type of discomfort he was experiencing is consistent with the arthritic changes that he has had in his back for many years before this incident occurred.

20. On cross-examination by Swett's counsel, Dr. Malumed testified as follows:

Q   Now, plaintiffs' counsel asked you some questions about if someone were struck. And that's one of the operative questions that I'd like to address here. And this may sound silly, but if Mr. Kopacz wasn't struck, would it be possible to relate any of his subjective complaints to the incident on August 9, 2002?

A   I have to think about that one. If he wasn't struck –

Q   If you need to think about it, I need to rephrase it.

A   I mean, if he wasn't struck, could he have – if there was no incident, then how could you relate any complaints to an incident that didn't really occur? And obviously he's had a long history of back problems and neck problems before this alleged incident occurred. If there was no incident, then obviously his complaints have to do with his long-standing problems he's had for years that he neglected to tell me about.

Q   And you've anticipated my next question. If he were not struck, is there anything in this case, to a reasonable degree of medical probability, that could explain the complaints and any findings that exist in this case? And you don't need to go through and list his whole history. You can just tell us.

A   Certainly there is. I mean, he's had a long history of back problems, arthritic problems in his back, and those certainly can cause aches and discomfort in his back.

21. Dr. Malumed's testimony was taken on January 30, 2006, more than 1 week before the trial began. Since the defense medical testimony was documented well before trial, plaintiff is at a complete loss to understand why 5 days of the Court's time, the jury's time and counsel's time were necessary to produce a result which was a foregone conclusion before the trial even started. This was spelled out in plaintiff's Trial Memorandum, which said that plaintiff would seek a directed verdict on maintenance because the uncontradicted evidence showed that he was entitled to it.

22. The voluminous records produced by defense counsel prior to the Pre-Trial Conference included all of the treatment records following plaintiff's December 24, 2004 accident. These also had to be reviewed several times by plaintiff's counsel and reviewed with the client prior to trial, but they never became relevant during the trial and counsel still does not understand why they were exhibits.

23. Defense counsel also subpoenaed the files of three lawyers who represented plaintiff in the past. Two of these lawyers represented plaintiff in connection with earlier claims, and one represented him in connection with the insurance fraud allegation made by Swett's insurance company as a result of the incident involved in this case. Counsel had to invoke the attorney-client privilege and then resolve defense counsel's insistent discovery demands. This included a

telephone conference with Magistrate Judge Donio in Camden pertaining to the privilege. The end result was that counsel had to review the entire files a second time to ferret out the privileged material and produce only the contents which did not appear to be privileged. This was quite time-consuming and produced nothing which became relevant at trial.

24. Defense counsel also subpoenaed the files of plaintiff's PIP carrier and Swett's insurance carrier. These were voluminous and also had to be reviewed when they first arrived and again as part of DRBA's exhibits and in preparation for trial. They also had to be reviewed with Mr. Kopacz because they were identified as exhibits, at least in part, by both defense counsel, yet they never became relevant at trial.

25. Counsel also had to review Kopacz' entire personnel file and learn DRBA's personnel manual and the SOPs. Each disciplinary complaint had to be investigated fully in light of DRBA's defense in the Pre-Trial Order even though at trial very few of them became important. Although counsel never took Mrs. Romano's deposition, he did interview her at length twice by telephone, so her testimony was neither a surprise nor very damaging. Very little was otherwise produced by DRBA to support the defenses in the pre-trial order.

26. The upshot of the foregoing is that an enormous amount of material was amassed by defense counsel, and it all had to be evaluated and understood by plaintiff's counsel. The work done by plaintiff's counsel is therefore much greater than the exposure of the case called for, but it was occasioned by the insatiable appetite for discovery of defense counsel and the unyielding intransigence of DRBA despite the obvious weakness of its case, especially in view of the less than credible witnesses it presented and the medical defense it offered.

27. The time expended was also high because prior to trial 9 full days were spent taking depositions at great distances from counsel's home - principally in Lewes, DE but also on Long Island, N.Y.

28. Finally, considerable time was spent complying with the Court's Pre-Trial and Trial requirements, which were new to counsel. Counsel hopes the Court understands that defense counsel also spent an enormous amount of time on this case, but they were paid by the hour and no doubt submitted periodic bills.

29. The award of counsel fees, as discussed below, may be either compensatory or punitive, but whatever it is, the result is intended to deter shipowners from withholding the payment of these benefits. Accordingly, all doubt should be resolved in favor of petitioner, and this is shown by Deisler, *infra*, where the Court found the shipowner's refusal to be unreasonable and awarded 90% of the time expended on consolidated maintenance/Jones Act/unseaworthiness cases (identical to what is before the Court) as a counsel fee.

### Legal Basis

30. The lodestone care establishing a right to an award of counsel fees for failure to pay maintenance and cure is Vaughan v. Atkinson, 369 U.S. 527 (1962). For the past 40 + years scholars and judges have attempted to explain Mr. Justice Douglas' rationale in the opinion in Vaughan as allowing counsel fees either as compensatory or punitive damages, and opinions vary widely.

31. The most recent effort is Guevara v. Maritime Overseas Corp., 59 F. 3rd 1496 (5th Cir. 1995). After an extensive analysis, the Guevara Court concluded,

"Simply put, all we can confidently say about Vaughan is that it

9

> entitled an injured seaman to recover attorney's fees - perhaps as part of compensatory damages - when his employer wilfully fails to pay maintenance and cure."
>
> 59 F. 3rd at 1503

32. The rule in this Circuit was recently set forth in Deisler v. McCormack Aggregates Co., 54 F. 3rd 1074 (3rd Cir. 1995). There the Court said that to recover attorney's fees a plaintiff must first establish defendant's "bad faith or recalcitrance." 54 F. 3rd at 1087. Although only one of the two need be shown, both were established in the instance case.

33. The jury found that DRBA's refusal to pay was "without reasonable justification", which is the definition of bad faith. DRBA's intransigence was undisputed since the Court charged that maintenance and cure had not been paid as of the trial date (Charge, p. 54), so there was no need for a jury finding on this aspect.

34. Counsel's Contingent Fee Agreement with plaintiff provides in relevant part as follows:

> Payment of the **Attorney** for services, risk and time shall be determined as follows:
>
> I (we) agree that out of whatever sum is obtained from the claim, either by way of settlement or verdict, the said **Attorney** shall be paid in accordance with the fee schedule approved by the New Jersey Supreme Court, but said Attorney agrees that he will take no fee for any recovery of maintenance and cure payments. The contingent fee will be paid on all other recoveries and said Attorney shall also be entitled to whatever attorney's fees the Court allows.

35. The check for $28,839 has been endorsed and sent to plaintiff, with no deduction for counsel fees, in accordance with the Contingent Fee Agreement. In light of the amount of the counsel fee which the Court will allow, counsel will probably take no fee on the $47,500 in compensatory damages or the pre-judgment interest, so counsel's only fee will be that awarded by this Court.

36. In the letter accompanying the check for $28,839, defense counsel made it clear that DRBA, in its Post-Trial Motions, will contest the jury's award of $47,500 in compensatory damages and its finding that DRBA's failure to pay maintenance and cure was unreasonable.

37. Counsel considers this to be another waste of the Court's and counsel's time. The amount of compensatory damages is wholly within the jury's discretion, so a challenge is frivolous. A challenge to the finding of "unreasonableness" is frivolous not only on the basis of the evidence presented but also because the finding was unnecessary for an award of counsel fees because DRBA's intransigence was uncontradicted. The finding was necessary to support an award of punitive damages even though these had been ruled out of the case. This finding will be relevant if an appeal is taken.

38. In Guevara, supra, the court suggested that some view Vaughan as an exception to the American rule that litigants must bear their own costs. This view upholds an award of counsel fees for an abuse of the judicial process. See 59 F. 3rd at 1500-1503.

39. Counsel considers DRBA's post-trial efforts to be a further abuse of this Court's process since they are frivolous and an attempt to undermine a conclusion that was foregone in light of the defense which DRBA offered at trial. In other words, DRBA is continuing its intransigence in a different form, and it shows no respect for this Court's time and attention in so doing. Since counsel will also be affected by this continued bad faith litigation, counsel will submit further Petitions for awards of counsel fees for the efforts expended to meet these unwarranted post-trial efforts.

03/07/2006 16:24 IFAX → Sue ☒012/013
Case 1:04-cv-00911-GMS    Document 146    Filed 03/07/2006    Page 12 of 13

WHEREFORE, petitioner respectfully requests the Court to grant the counsel fees as set forth in the itemization attached as Exhibit 2.

SEITZ, VAN OGTROP & GREEN, P.A

/s/ James S. Green
JAMES S. GREEN, ESQ. (DE0481)
jgreen@svglaw.com
222 Delaware Avenue, Suite 1500
P. O. Box 68
Wilmington, DE 19899
(302) 888-0600
Attorneys for Plaintiffs

OF COUNSEL:

E. Alfred Smith, Esquire
E. Alfred Smith & Associates
1333 Race Street, Second Floor
Philadelphia, PA 19107


Date: March 7, 2006

## CERTIFICATE OF SERVICE

I, JAMES S. GREEN, hereby certify that on this 7th day of March, 2006, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will send notification of such filing to counsel of record.

**PETITION FOR ALLOWANCE OF COUNSEL FEES AND COSTS**

/s/ James S. Green
_____
JAMES S. GREEN (ID No. 0481)
jgreen@svglaw.com

37091 v1