# EXHIBIT A

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                IN AND FOR THE DISTRICT OF DELAWARE

 3                            - - -

 4   JAN KOPACZ, INDIVIDUALLY and as  :    Civil Action
     Administrator of the Estate of   :
 5   CATHY KOPACZ, Deceased,          :
                                      :
 6              Plaintiffs,           :
                                      :
 7        v.                          :
                                      :
 8   DELAWARE RIVER AND BAY           :
     AUTHORITY, and CRAIG SWETT,      :
 9                                    :
                Defendants.           :    No. 04-911 GMS
10
                                 - - -
11
     JAN KOPACZ,                      :    Civil Action
12                                    :
                Plaintiff,            :
13                                    :
          v.                          :
14                                    :
     DELAWARE RIVER AND BAY           :
15   AUTHORITY,                       :
                                      :
16              Defendant.            :    NO. 04-1281 GMS

17                            - - -

18                    Wilmington, Delaware
                  Wednesday, February 8, 2006
19                         9:00 a.m.

20                            - - -

21   BEFORE:  HONORABLE GREGORY M. SLEET, U.S.D.C.J., and a Jury

22        EXCERPTED TRANSCRIPT - THIRD DAY OF TRIAL

23                            - - -

24

25
     APPEARANCES:
```

1   their sick leave is indeed their maintenance, and their
2   health insurance is their cure.  That being said, if he was
3   going after the vehicle operator, and he was using his sick
4   and annual, we weren't going to pay him maintenance wages so
5   he would get double paid, no.  And not to mention the fact
6   that we had cumulatively had a problem with the validity of
7   the report.
8   Q.   Okay.  My question, Ms. Miller, was, were you one of
9   the group who made the decision not to pay Mr. Kopacz
10  maintenance?
11  A.   I think I just answered that.
12  Q.   The answer is yes?
13  A.   Yes, but he was receiving maintenance in one respect,
14  using his sick leave, and we weren't going to pay him
15  double.
16  Q.   Well, if you had paid him his maintenance he wouldn't
17  have used his sick leave.  Isn't that correct?
18  A.   We needed proof that his time away from work was
19  indeed related to an injury while at work.  And considering
20  all the information we had received, it wasn't proof enough
21  to us to say that he was injured at work.  We were trying to
22  get information about the medicals in addition to what risk
23  management was doing.  The HR director, at the time, too,
24  was also trying to obtain doctor's certification for family
25  medical leave.

Miller - direct

1  Q.   Okay.  Now, you recall that I took your deposition in
2  connection with this lawsuit.  Correct?
3  A.   Yes.
4  Q.   Okay.  And that was taken on August the 2nd of 2004.
5  Correct?  As best you can recall?
6  A.   Yes.
7  Q.   And I think it was taken in my office.  Is that
8  correct?
9  A.   Yes.
10 Q.   And your lawyer was present, Ms. Reeves.  Correct?
11 A.   Yes.
12 Q.   And she was there representing the Authority.
13 Correct?
14 A.   Yes.
15 Q.   And of course you had consulted with her before you
16 appeared for your deposition?
17 A.   Yes.
18 Q.   And at the time of your deposition you were put under
19 oath, were you not?
20 A.   Yes.
21 Q.   Then I asked you a series of questions.  Correct?
22 A.   Yes.
23 Q.   Do you recall that I asked you, what does the
24 Authority think happened, according to you, as of today?
25 And your answer:

1           We don't think he was injured by the vehicle
2   backing up.
3           Do you recall that?
4           MS. REEVES:  Would you tell me the page number,
5   Mr. Smith?
6           MR. SMITH:  I am sorry, Page 81.
7   BY MR. SMITH:
8   Q.   Do you recall that testimony?
9   A.   Yes.  That's why I said, we made a decision not to pay
10  him injury pay, same -- maintenance wages in the form of
11  injury pay because we didn't believe that he was injured
12  based on the information we had.
13  Q.   Then I asked you, What do you think caused him to be
14  injured?
15          MS. REEVES:  Objection, Your Honor.  I think
16  this is improper impeachment, unless the question has been
17  asked.
18          THE COURT:  Sustained.  You may impeach the
19  witness, but you may do it properly.  Mr. Smith, I don't
20  have to explain how to do it.  You know how to do it.
21  BY MR. SMITH:
22  Q.   Do you have an opinion, Ms. Miller, as to what caused
23  Mr. Kopacz to be injured?
24  A.   My opinion in my deposition was based on more
25  information than just the incident reports or the police

1  Smith?  Is that one of your exhibits?
2         MR. SMITH:  It is one of yours.  No, I have not
3  specifically identified it as an exhibit.
4         MS. REEVES:  I am just trying to follow along.
5         MR. SMITH:  Never mind.  I will withdraw the
6  questions, in the interests of saving time.
7  BY MR. SMITH:
8  Q.    Ms. Miller, the Authority has never had any evidence
9  whatsoever that Mr. Kopacz' injuries were caused by willful
10 misconduct on his part.  Is that correct?
11 A.    That's correct.
12        MR. SMITH:  Your Honor that, all I have.
13        THE COURT:  Ms. Reeves, are you going to lead?
14        MS. REEVES:  Yes.
15        CROSS-EXAMINATION
16 BY MS. REEVES:
17 Q.    Just a couple areas, Ms. Miller, I want to clarify.
18        At the beginning of Mr. Smith's questions, I
19 think he asked you a question to which you answered that if
20 an employee was sick or injured, initially, his sick time
21 was used until it was accepted as an on-the-job injury.  Is
22 that correct?
23 A.    That's correct.
24 Q.    And you mentioned OJI.  What does that stand for?
25 A.    On-the-job injury.

Miller - cross

1  Q.   Once, hypothetically, once the injury or illness is
2  accepted as an on-the-job injury, is the employee then cut a
3  check for the value of that sick time?
4  A.   For the -- no.  The sick time is returned to the
5  employee's accruals.
6  Q.   To be used in some future time?
7  A.   Yes.
8  Q.   Now, what about if an employee is on long-term
9  disability, are they accruing sick and leave time then?
10 A.   No, they are not.
11 Q.   Now, aside from this incident that we have been
12 discussing, has Mr. Kopacz received full wages for any
13 other -- strike that.
14      Has Mr. Kopacz received his pay, without using
15 annual leave time, for any on-the-job injuries before this
16 incident?
17 A.   He did, of course, in the June 30th incident.  And, as
18 far as I know, before -- as far as, to the best of my
19 knowledge, that was it.
20 Q.   And I asked you about disability.  Is there any
21 disability benefits provided to the employees of the
22 Authority, including seamen on the ferries?
23 A.   Disability benefits are provided to all, long-term
24 disability benefits are provided to all regular full-time
25 employees after a 90-day period.  As a matter of fact, Mr.

# EXHIBIT B

Oct-29-02 10:42A

P.01

# LAW OFFICES

# TABAK & MELLUSI

71 HUDSON STREET

NEW YORK, NEW YORK 10013-2800

TEL. # (212) 962-1590

FAX # (212) 385-0920

SHELDON TABAK
RALPH J. MELLUSI

STEPHEN B ROBERTS
JACOB SHISHA

October 29, 2002

**VIA FAX (302) 571-6420**

The Delaware River & Bay Authority
Post Office Box 71
New Castle, Delaware 19720

Attention: Linda H. Murphy
Director of Human Resources

    Re:  JAN KOPACZ
    MV-DELAWARE
    D/T: 8/9/02
    OUR FILE NO: S2128.02

Dear Ms. Murphy:

    We represent Jan Kopacz, with respect to an accident that occurred while he was working aboard the MV Delaware on August 9, 2002. As you may be aware, a passenger aboard the vessel backed his car into the Mr. Kopacz. He has been declared not fit for duty and has been undergoing physical therapy. He is due to see his physician on November 4, 2002 at which time his duty status will be evaluated.

    Since this is a work-related accident, this claim comes under the Jones Act and the doctrine of Maintenance and Cure. To date, Mr. Kopacz has not made a claim for maintenance and cure because he has been collecting his accrued sick time. His sick time has run out, however, since a vehicle struck him, he has elected, to recover from no-fault, any remaining loss of wages. Since this is a work-related injury we do not believe that an FMLA leave is applicable. Mr. Kopacz, is entitled to keep his job until such time that he is found fit for duty by a physician of his choosing under the Jones Act. We are hopeful he will be found fit for duty on November 4, 2002.

EXHIBIT
DRBA-21

P.02

Oct-29-02 10:42A

October 29, 2002
Page 2 of 2

We thank you for your considerations and request that you call me at your convenience to discuss this matter.

Very truly yours,

TABAK & MELLUSI

Jacob Shisha

cc: Jan Kopacz

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAN KOPACZ AND CATHY KOPACZ | : CIVIL ACTION |
| v. | : NO. 04-911 |
| DELAWARE RIVER & BAY AUTHORITY | : |
| and | : |
| CRAIG SWETT | : |

**DEFENDANT, DELAWARE RIVER & BAY AUTHORITY'S
PROPOSED VOIR DIRE QUESTIONS**

Defendant, Delaware River & Bay Authority, by and through its attorneys, Donna Adelsberger & Associates, P.C., respectfully requests that the following questions be asked during the voir dire of the jury:

1. This case involves alleged personal injuries to Jan Kopacz which allegedly occurred on August 9 2002, while working as a deckhand aboard the ferry, M/V DELAWARE. Is anyone familiar with the actual facts of this incident or have any knowledge or communication in any way that relates to this incident?

2. Has anyone on the panel ever traveled on the Delaware River & Bay Authority ferries which operate between Lewes, Delaware and Cape May, New Jersey?

3. Do you know or have any dealings with anyone who has ever worked for the Delaware River & Bay Authority?

4. Do any of you know or have any dealings with the following individuals who may be called as witnesses in this case:  See witness list.

5. Does anyone on the panel know or ever been treated by any of the following medical providers: <u>See attached list</u>.

If so, please describe the nature of your treatment or dealings with these medical providers.

6. Have you or anyone close to you ever worked in the maritime transportation industry?

7. Have you or anyone close to you ever been injured at work?

8. Have you or anyone close to you ever suffered from a neck, shoulder or back injury or had a bad back? If so, please describe the injury, how it occurred and whether it has resolved.

9. Is anyone currently suffering from a physical condition that would tend to make you sympathize with the Plaintiff?

10. Do any of you take prescription pain medication? If so, state the reason for taking the medication.

11. Have you or anyone close to you ever been injured in an auto accident? If so, please describe the accident and resulting injury, if any.

12. Has anyone on the panel ever sustained a serious injury? If so, (1) what was it; (2) how did it happen, and (3) have you recovered?

13. Have you or anyone close to you ever been involved in a personal injury lawsuit, either as a plaintiff or defendant? If so, what was the nature and outcome of the case?

14. Have you sat on a jury panel before? If so, what type of case was it

and was a verdict reached?

15. Have you or anyone close to you ever been employed in the legal or medical profession? If so, describe your training and/or occupation and for whom are you currently employed?

16. Can you disregard any sympathy you may feel for the plaintiff by rendering a fair and impartial verdict in this case?

17. Do you feel that the Plaintiff is entitled to an award of monetary damages in this case just because he filed a lawsuit?

18. Do you agree that a business is to be treated the same as an individual in rendering your decision in this case?

19. Is there any other reason that has not been covered which you believe would prevent you from making a fair and impartial decision in this case? If so, what is your reason?

Defendant reserves the right to privately question individual panel members during the voir dire, if appropriate, and to supplement these questions with proper notice.

Respectfully submitted,

DONNA ADELSBERGER & ASSOCIATES, P.C.

BY:s/ Mary Elisa Reeves, Esquire
Mary Elisa Reeves, Esquire
Donna L. Adelsberger, Esquire
Attorneys for Defendant
Delaware River and Bay Authority

Date: December 21, 2005

3