IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAN KOPACZ and JAN KOPACZ, Administrator for the Estate o f Cathy Kopacz, | ) ) ) | C.A. No. 04-911 GMS |
| Plaintiff, | ) ) | Jury Trial Demanded |
| v. | ) ) ) | |
| DELAWARE RIVER AND BAY AUTHORITY, and CRAIG SWETT, | ) ) ) | |
| Defendants. | ) ) | |
| JAN KOPACZ, | ) ) ) | C.A. No. 04-1281 GMS |
| Plaintiff, | ) ) | |
| v. | ) ) ) | |
| DELAWARE RIVER AND BAY AUTHORITY, | ) ) ) | |
| Defendant. | ) ) | |

**Plaintiff's Reply to DRBA's Brief in Opposition to
Plaintiff's Petition for Counsel Fees**

**1.  DRBA is continuing its intransigence and presents specious arguments.**

The jury's verdict is more than ample support for the award of counsel fees, and there

was no need for a fact finding of recalcitrance because the maintenance and cure were not paid as

of the time of trial, 3 1/2 years after the incident.

Furthermore, DRBA repeats its claimed justification for refusing to pay maintenance and

cure, and this was for the jury.  DRBA does not mention the opinion that Kopacz had the "crap"

beat out him the night before nor does it acknowledge that the treatment at Beebe Memorial

Hospital, which it accepted without question from the beginning, showed that the disability had

its onset while Kopacz was in the service of a ferry because he left the ferry and went by

ambulance directly to Beebe.

DRBA has been stonewalling since the outset. Counsel first wrote to DRBA on August

19, 2003 (Exhibit P-58) and received an answer from DRBA's adjuster, Lamorte Burns & Co,

Inc. (Exhibit P-57). The answer requested "factual and medical allegations" to show "exactly

why you think the Claimant is entitled to maintenance...." It also sought medical records and

income tax returns for a few years prior to the accident. Some interest was expressed in "early

nonbinding mediation."

Only 3 ½ months' maintenance was in issue along with $12-13,000 in medical bills, so

the elaborate request from the adjuster was surprising. Plaintiff's answer, however, spelled out

precisely what his position was, as follows:

> Mr. Kopacz's disability had its onset while he was subject to the
> call of a DRBA ferry, so he is *indisputably entitled* to maintenance. Your
> principals never paid this to him and your letter does not say why. DRBA
> permitted him to use his sick leave benefits when it knew he was entitled
> to maintenance.

> Mr. Kopacz made a claim against the driver of the car which struck
> him. He did not initially pursue DRBA because he did not think DRBA
> was at fault. A DRBA employee changed his story, and apparently the
> driver's insurance carrier denied the claim and suggested that Mr. Kopacz
> was guilty of insurance fraud based on the changed statement of the
> DRBA employee. Enclosed for your information are copies of State
> Farm's letters of September 13 and 27, 2002 for your information. You
> will note that State Farm denies being the PIP carrier for Mr. Kopacz.

> Our factual allegations are well known to DRBA since the accident
> was reported immediately and was fully investigated by DRBA. Mr.
> Kopacz was even taken to the hospital by ambulance after the accident, so
> there is no doubt that his disability had its onset while he was subject to

the call of duty of one of DRBA's ferries. We are not aware of any questions about Mr. Kopacz's disability status and need for medical treatment.

This was borne out by the jury's verdict, which mirrored the statement in <u>Rodriguez v. Bahamas Cruise Line, Inc.</u>, 898 F. 2d 312, 314-315 (2d Cir. 1990): "A seaman is entitled to look to his ship operator for maintenance and cure following any injury incurred while in the ship operator's employ. The actual cause of the seaman's injury is irrelevant to his right to maintenance and cure."

The lawyer at Lamorte Burns has 25 years' experience defending maritime personal injury claims and has handled hundreds of maintenance cases. Also involved was the lawyer from the insurance company, and she has an equal amount of experience. Both are experts in the law of maintenance.

The response from Lamorte Burns was sent six weeks later, on November 4, 2003, and it recommended that Kopacz make a claim to his PIP carrier. This must have been suggested by someone at DRBA familiar with automobile insurance, and PIP coverage is available only if an automobile is involved, so DRBA must have believed that Kopacz truly was struck by the Swett vehicle.

Since it was clear that DRBA would not pay the maintenance and cure, counsel started the classic non-injury maintenance suit. This is probably the easiest of all maritime cases to try. If DRBA truly believed it had a meritorious defense, it could have sought a prompt trial date, as plaintiff did, and produced its employee-witnesses and brought the matter to a head. It did not do so but embarked on a lengthy, time consuming search for credibility ammunition. It found none but it did obtain an enormous number of medical records, which its medical expert, Dr. Malumed, estimated to be 500-600 pages.

In fact, the records amassed by defense counsel, which included far more than medical records, totaled 2289 pages. This is shown on the receipt which is an Exhibit to DRBA's Bill of Costs, and this is the charge for the copies made for the Court and opposing counsel for the Pre-Trial Conference. The copying charges were $1,111.33. Plaintiff was under an equal obligation to have copies made, and these were made at Kinko's. The bill for this work, shown on page 25 of Kopacz's Exhibit 1 to the Petition for Counsel Fees, was for $24.08.

The trial evidence focused principally on the accident facts and DRBA's attitude initially. The Court severely limited plaintiff's presentation due to misrepresentations by DRBA, but the jury heard and considered Miller's testimony and it heard and evaluated the DRBA employees upon whom DRBA based its contention that the accident never happened. It found DRBA liable for maintenance and that DRBA's refusal was unreasonable and without reasonable justification and awarded $47,500 in compensatory damages.

The jury's verdict is far more than enough to support the award for counsel fees, and there was no need to burden it with testimony concerning the non-jury proceeding, the extensive discovery effort, the refusal to negotiate, the stonewalling of the Magistrate in Delaware and the stonewalling of this Court so far as settlement was concerned. The callousness, bad faith and recalcitrance were shown by the fact that maintenance and cure were not paid until after plaintiff had recovered a jury verdict, and there was no need for a jury finding on recalcitrance.

The Court should also know that throughout the entire process DRBA had 3 maritime lawyers advising it. A maritime lawyer from the insurance company sat through the entire five days and heard all of the testimony and the closing arguments. Counsel does not know the extent to which she actually participated and was responsible for seeing that the Rule 50 Motion was

renewed at the close of all of the evidence, but she certainly never attempted to cut DRBA's losses by initiating settlement discussions.

      2.      The counsel fees are understated and the Court is justified in awarding a larger amount.

Plaintiff adamantly opposes any "subsequent filing" by DRBA concerning the amount of the counsel fees being sought.

At the close of the trial plaintiff requested 30 days within which to file the petition because the jury's verdict justified it. The Court granted the 30 days and counsel filed the Petition, with the itemization attached as Exhibit 1, in 21 days. DRBA thereafter had 30 days, which it took, to raise any questions concerning the itemization set forth, and it failed to do so. DRBA's request for more time is another unwarranted imposition on this Court and an attempt to harass plaintiff.

The time set forth was conservatively estimated, and the efforts were all documented in the file and largely mirrored the efforts of defense counsel. DRBA does not set forth the number of hours it was charged by its counsel to prepare and present its case, and the time spent by plaintiff's counsel was largely caused by the extensive efforts of defense counsel.

It is not true to suggest that the time spent on the Delaware lawsuit was exclusively on the Jones Act and unseaworthiness claim. In fact, it was mostly spent on the maintenance issue.

Plaintiff opposed the Motion for Summary Judgment on punitive damages in the maintenance case. Plaintiff's unsuccessful efforts for over a year to obtain depositions of DRBA personnel were exclusively in the maintenance case. Plaintiff's efforts to obtain DRBA's file materials, which involved an Opinion by this Court, dealt exclusively with maintenance. The medical records related principally to the maintenance issue because the claim was only for 3 ½

months' disability so they were irrelevant to that.

At trial the bulk of plaintiff's case dealt with maintenance.  Plaintiff testified and plaintiff offered Bonnie Miller and Trudy Spence-Parker, both of whom were maintenance witnesses. The remainder of the testimony was medical –Dr. Montross-Lopez supported the claim that the disability had its onset while Kopacz was working and Dr. Mehdi's testimony dealt in part with the termination of benefits due to the non-payment of medical bills.

Plaintiff's claim against Swett consisted only of 3 ½ months' lost wages since the medical expenses were recoverable in the maintenance case.  Plaintiff could also be charged with contributory negligence, so the exposure was limited.  Prior to trial plaintiff tried on at least 4 occasions to settle with Swett, but no offer was ever made even though plaintiff agreed to be very reasonable.  It probably cost Swett's insurer more to try the case than it would have to settle.

DRBA's brief says nothing about the claim for counsel fees because the post-trial motions are baseless and an unwarranted imposition on the Court and counsel.

The jury's verdict awarding maintenance is moot because that portion of the judgment has been paid.  Plaintiff's entitlement to counsel fees is unquestioned because the jury awarded plaintiff maintenance and it has been paid and DRBA's recalcitrance was and is undisputed. Only the amount remains in issue.

The Court lacks jurisdiction of the Motion for Judgment N.O.V. because DRBA apparently failed to renew its Rule 50 Motion at the close of the evidence as required by F.R.Civ.P. 50(b).  Plaintiff raised this in his Objections to DRBA's Post-Trial Motions and there has been no response by DRBA, so apparently the record bears this out.

The Motion for Judgment N.O.V. has no merit in any event.  As to the unreasonable part, plaintiff requested this interrogatory to make a record which would enable him to appeal the

Court's pre-trial dismissal of his punitive damages claim. If successful in such an appeal, a retrial would be limited to the amount of punitive damages only, and this would obviously save a lot of time.

If DRBA's Motion were to be granted, it would require an appeal, and the Court's evidentiary rulings would also be in issue. If the appeal were to be successful, a retrial would have to deal with DRBA's failure to pay the maintenance as well, so the retrial would be much longer.

A retrial of the failure to pay issue would serve no purpose whatsoever. The point is that DRBA probably did not think this through, and its motion is an unthinking, knee-jerk stonewall aimed at frustrating plaintiff but imposing on the Court as well.

Even with the exclusion of the evidence, there remained more than enough evidence, beginning with counsel's letters to DRBA and its adjuster before suit was started and continuing through to a failure to recognize the significance of Dr. Malumed's testimony when it was taken a week before the trial began, 3 ½ years later, to sustain the verdict.

<u>Conclusion</u>

This Court has had an ample opportunity to evaluate counsel's ability, work ethic, conduct before the Court and his fidelity to his obligations to the Court and its rules and Orders. The estimates of the time spent are conservative and counsel missed a lot of time because telephone calls and other things were not recorded. The Court would therefore be justified in awarding more than that being sought. The Court would also be justified in awarding a higher hourly rate than that being sought. Counsel has been diligent, thorough in his preparation and always mindful

of his responsibilities as an officer of the court, and counsel requests the Court to consider those

factors when fixing the amount.

<div style="margin-left: 50%;">

Respectfully submitted,

**SEITZ, VAN OGTROP & GREEN, P.A.**

/s/ James S. Green

**JAMES S. GREEN, ESQ. (DE0481)**

**jgreen@svglaw.com**

222 Delaware Avenue, Suite 1500

P. O. Box 68

Wilmington, DE 19899

(302)888-0600

Attorneys for Plaintiffs

</div>

OF COUNSEL:

E. Alfred Smith, Esquire

E. Alfred Smith & Associates

1333 Race Street, Second Floor

Philadelphia, PA 19107

Date:  April 24, 2006

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 24, 2006, I electronically filed with the Clerk of

Court **Plaintiff's Reply to DRBA's Brief in Opposition to Plaintiff's Petition for Counsel**

**Fees** using CM/ECF which will send notification of such filing to counsel of record.

/s/ James S. Green
James S. Green, Esq. (DE #481)
jgreen@svglaw.com